# UNITED STATES *v.* MOREHEAD.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE DISTRICT OF MONTANA.

No. 685.  Argued March 14, 1917.—Decided April 30, 1917.

A charge of perjury may be based upon a valid regulation of the Land Department requiring an affidavit, if the oath be taken "before a competent tribunal, officer or person." *United States* v. *Smull,* 236 U. S. 405.

The Land Department being expressly charged with the duty of enforcing the public land laws by appropriate regulations, its regulations in that regard, when duly promulgated, must be deemed valid if they are not unreasonable, inappropriate, or inconsistent with the acts of Congress.

A regulation of the Land Department requiring applicants for soldiers'

homesteads 'under Rev. Stats., §§ 2304 *et seq.*, to make oath in their declaratory statements that their claims are for their exclusive use and benefit, for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person, and that agents filing such statements have no right or interest, direct or indirect, in the filing thereof, is a valid regulation, not adding to the conditions of the statute but serving to effectuate its purpose.

The regulation of the Department providing that soldiers' declaratory statements, when filed by agent, may be executed before any officer having a seal and authorized to administer oaths generally, is appropriate and valid, and an oath to such a statement taken before a state notary or clerk of court pursuant to such regulation violates the federal perjury statute, if the statement is material and false.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Kearful,* with whom *Mr. S. W. Williams* was on the brief, for the United States.

*Mr. W. B. Sands* for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

Morehead was indicted under § 37 of the Criminal Code for conspiring with others to commit an offense against the United States. The offense contemplated by the conspirators is subornation of perjury (Criminal Code, § 126) in connection with soldiers' declaratory statements, to be filed by defendant as agent, covering public lands under the Homestead Law. The perjury set forth in the indictment consists in false swearing before notaries public and clerks of state courts to declaratory statements. The parts of the statement alleged to be false are those which declare:

(1) That the claim is made for his [the applicant's] exclusive use and benefit, for the purpose of actual settle-

ment and cultivation, and not either directly or indirectly for the use or benefit of any other person.

(2) That the agent has no right or interest, direct or indirect, in the filing of such declaratory statement.

The District Court sustained a demurrer on the ground that the indictment did not charge a crime, holding that there was no law which required affidavits to soldiers' declaratory statements; that the Land Department was not authorized to exact them; that consequently no law "authorizes an oath to be administered" to such affidavits; and as perjury is possible only when an oath is authorized to be administered, the procuring of these false oaths could not be subornation of perjury, nor an agreement to secure them a conspiracy to suborn perjury. The case comes here on writ of error under the Criminal Appeals Act (March 2, 1907, c. 2564, 34 Stat. 1246).

The Homestead Law (Rev. Stats., §§ 2304–2309, embodying Act of June 8, 1872, c. 338, 17 Stat. 333), does not prescribe whether or not an affidavit shall accompany a soldier's declaratory statement. The affidavit is prescribed by a regulation of the Commissioner of the General Land Office, promulgated with the approval of the Secretary of the Interior.[1] It is clear that a charge of perjury

---

[1] The material part of the Regulation of October 11, 1910 (39 L. D. 291, 294–5) is as follows:

"The soldiers' declaratory statement, if filed in person, must be accompanied by the prescribed evidence of military service and the oath of the person filing the same, stating his residence and postoffice address, and setting forth that the claim is made for his exclusive use and benefit for the purpose of actual settlement and cultivation and not, either directly or indirectly, for the use or benefit of any other person; . . .

"In case of filing a soldier's declaratory statement by agent, the oath must further declare the name and authority of the agent and the date of the power of attorney, or other instrument creating the agency, adding that the name of the agent was inserted therein before its execution. It should also state in terms that the agent has no right or interest, direct or indirect, in the filing of such declaratory statement.

may be based upon a valid regulation of the General Land Office requiring an affidavit if the oath be taken "before a competent tribunal, officer or person." *United States v. Smull*, 236 U. S. 405. The question obviously arising here is whether the law authorized the oath to be administered. Another question—whether it was administered by a competent tribunal, officer or person—was treated by both parties as requiring decision. Assuming without specially determining the occasion for passing upon the second question, we proceed to consider both.

1. *Whether an affidavit may be required to a soldiers' homestead declaratory statement.*

The Homestead Law [1] gives to every soldier who served

---

"The agent must file (in addition to his power of attorney) his own oath to the effect that he has no interest, either present or prospective, direct or indirect, in the claim; that the same is filed for the sole benefit of the soldier, and that no arrangement has been made whereby said agent has been empowered at any future time to sell or relinquish such claim, either as agent or by filing an original relinquishment of the claimant.

"Where a soldier's declaratory statement is filed in person, the affidavit of the soldier or sailor must be sworn to before either the register or the receiver, or before a United States commissioner, or a United States court commissioner, or judge, or clerk of a court of record in the county or land district in which the land sought is situated. Where a declaratory statement is filed by an agent, the agent's affidavit must be executed before one of the officers above mentioned, but the soldier's affidavit may be executed before any officer having a seal and authorized to administer oaths generally, and not necessarily within the land district in which the land is situated."

[1] Rev. Stats., § 2304:

"Every private soldier . . . who has served in the Army of the United States during the recent rebellion . . . shall . . . , . be entitled to enter upon and receive patents for a quantity of public lands not exceeding one hundred and sixty acres . . . subject to entry under the homestead laws of the United States; but such homestead settler shall be allowed six months after locating his homestead, and filing his declaratory statement, within which to make his entry and commence his settlement and improvement."

in the Army of the United States during the War of the Rebellion for ninety days, was honorably discharged and remained loyal to the Government, the right, upon certain conditions, to enter upon 160 acres of the public land as a homestead and receive a patent therefor. To comply with these conditions the applicant must make actual entry,[1] settlement and improvement; and he must, on applying to enter the land, make and file the affidavit, as provided in Rev. Stats., § 2290, that such application is honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other person. Furthermore, in order to obtain a certificate or patent, he must, under Rev. Stats., § 2291, make proof of his residence for the full period and an affidavit "that no part of such land has been alienated." The filing of a declaratory statement is not a necessary step in acquiring title to land. It relates to a privilege, akin to pre-emption, by which he may secure, prior to the entry under § 2290, a preferential right to acquire, under the homestead law, the particular tract located on. The privilege is exercised by filing the declaratory statement with the register; and if exercised, lapses unless within six months thereafter, the soldier makes entry and actually commences settlement and improvement. See *Charles Hotaling,* 3 L. D. 17, 20; *Stephens* v. *Ray,* 5 L. D. 133, 134. To render this privilege readily available to soldiers living at a distance, authority is given (Rev. Stats., § 2309)[2] to "enter upon

---

[1] The term entry is used in the statutes, regulations and decisions in several senses; sometimes to designate the initiatory proceeding whereby an inchoate right or privilege is acquired; sometimes as referring to final entries or proof; sometimes as referring to the proceeding as a whole. *Dealy* v. *United States,* 152 U. S. 539, 545; *Stearns* v. *United States,* 152 Fed. Rep. 900, 907; *United States* v. *Northern Pacific Ry. Co.,* 204 Fed. Rep. 485.

[2] Rev. Stats., § 2309:

"Every soldier, sailor, marine, officer, or other person coming within the provisions of section twenty-three hundred and four, may, as well

the homestead by filing a declaratory statement," "as well by an agent as in person." Thus the soldier can be assured of the selection of an advantageous homestead before perfecting his plan for removing to his new home.

It is a matter of common knowledge that this special privilege, granted to facilitate the acquisition by soldiers of homesteads in grateful recognition of patriotic service, was soon perverted into an instrument of fraud. Soldiers' declaratory statements, acquired by so-called agents in large numbers, became the subject of extensive speculation. They were used as a means of pre-empting choice lands for a period of six months with a view merely to selling relinquishments of locations to persons . desiring to acquire public lands under the pre-emption or general homestead laws. See 1 L. D. 79. To stay this abuse the General Land Office issued, on December 15, 1882, the circular concerning "Soldiers' Homestead Declaratory Statements," (1 L. D. 36) [1] prescribing requirements

---

by an agent as in person, enter upon such homestead by filing a *declaratory statement, as in pre-emption cases;* but such claimant in person shall within the time prescribed make his actual entry, commence settlements and improvements on the same, and thereafter fulfill all the requirements of law."

[1] " SOLDIERS' HOMESTEAD DECLARATORY STATEMENTS."

CIRCULAR.

"*Commissioner McFarland to registers and receivers, December 15, 1882.*

"In view of extensive frauds in the matter of declaratory statements of homestead applicants under Sections 2304 and 2309 of the Revised Statutes, the privilege conferred by the filing of such claims having been made the occasion of barter and sale, without attempt on the part of the soldier to comply with the statute by making formal entry at the district office, and commencement of settlement upon the land within the prescribed period of six months, the following regulations are prescribed for the admission of such filings:

"1. Proof of qualification as an honorably discharged soldier must be furnished in accordance with existing regulations in case of entry by soldiers who make direct homestead application without availing them-

which have since remained in force and are embodied in substance in the regulation of October 11, 1910.

Defendant contends that this regulation, which has been enforced continuously for nearly thirty-five years, is invalid. Since the Land Department is expressly charged with the duty of enforcing the public land laws by appropriate regulations [1] and the regulation in question was

selves of the preliminary filing. Oath of the soldier, setting forth his residence and post-office address, must accompany the filing, to the effect that the claim is made for his exclusive use and benefit, for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person; and it must also be shown by such oath that he has not theretofore either made a homestead entry or filed a declaratory statement under the homestead law.

" 2. Where the declaratory statement is offered for filing by an agent under Section 2309, the oath must further declare the name and authority of such agent, giving the date of the power of attorney or other instrument creating the agency, and also aver that the name was inserted therein before execution. It will be observed that with the filing of the declaratory statement the power of the agent, under the law, is at an end. He has thereafter no right or control with respect to the matter nor over the land selected, and has no authority to relinquish the claim or do any other act in the premises. The further declaration of the statute is express, that 'such claimant in person shall within the time prescribed make his actual entry, commence settlements and improvements on the same, and thereafter fulfill all the requirements of law.' Nevertheless, the oath of the soldier and the power of attorney should show that such is the understanding of the matter, and he should swear in terms that such agent has no right or interest direct or indirect in the filing of such declaratory statement. . . ."

[1] Rev. Stats., § 441:

"The Secretary of the Interior is charged with the supervision of public business relating to the following subjects: . . . The public lands. . . ."

Rev. Stats., § 453:

"The Commissioner of the General Land-Office shall perform, under the direction of the Secretary of the Interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands, . . ."

duly promulgated, the assertion of its invalidity must be predicated either upon its being inconsistent with the statutes or upon its being in itself unreasonable or inappropriate. That the requirement of the soldier's affidavit to the facts essential to the existence of any right of the applicant under the law is both reasonable and appropriate, can scarcely be doubted. *United States* v. *Smull*, 236 U. S. 405, 411; *United States* v. *Bailey*, 9 Pet. 238, 255. But defendant urges that the regulation is inconsistent with the statute in that it adds to the requirements of the statute still another condition to be performed before the soldier can acquire his homestead; and hence is legislation, not regulation. But the regulation does not add a new requirement in exacting the affidavit, as in *Williamson* v. *United States*, 207 U. S. 425, 458–462. It merely demands appropriate evidence that the proceeding is initiated— as the statute requires it must be throughout conducted— in good faith for the single purpose of acquiring a homestead.

Great stress is laid upon the reference to "pre-emption cases" in Rev. Stats., § 2309, which provides that the soldier "may, as well by an agent as in person, enter upon such homestead by filing a declaratory statement, as in pre-emption cases." In proceedings under the pre-emption laws (Rev. Stats., §§ 2257–2288, repealed by Act

Rev. Stats., § 161:

"The head of each Department is authorized to prescribe regulations, not inconsistent with law, for the government of his Department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

Rev. Stats., § 2478:

"The Commissioner of the General Land-Office, under the direction of the Secretary of the Interior, is authorized to enforce and carry into execution, by appropriate regulations, every part of the provisions of this Title [Title xxxii—The Public Lands] not otherwise specially provided for."

of March 3, 1891, c. 561, 26 Stat. 1095) an affidavit was not required either by the statute or by regulation (see 10 L. D. 687); and it is said that it cannot, therefore, be required under the provisions for soldiers in the Homestead Law. But the reference in the latter statute carries no such implication. It was inserted for a different purpose. The general homestead law does not give the privilege of securing, in advance of formal entry, a preferential right to a particular location. That is, it gives no right to prior selection; and none accrues from prior occupation save such as is given by § 3 of the Act of May 14, 1880, c. 89, 21 Stat. 140. Nor does the pre-emption law give a privilege to acquire, *merely* by selection, a preferential right to a particular parcel of land. But under it, the person who actually "settles and improves" land, may in advance of entry under Rev. Stats., § 2262, acquire a preferential right over others, to the particular parcel, by filing with the register within thirty days thereafter (Rev. Stats., § 2264) "a written statement describing the land settled upon." To that "written statement" the "declaratory statement" provided for by the provision for soldiers in the Homestead Law may be likened; but the conditions under which it is filed are very dissimilar. The pre-emptioner must personally before "filing" have actually entered upon the land, must have commenced settlement and improvement—acts which in themselves furnish evidence that the proceeding has been initiated in good faith. The soldier homesteader, on the other hand, need do nothing whatever to obtain a six months' preferential right save file the declaratory statement, and that may be done by an agent—a situation calling for extrinsic evidence by affidavit of the applicant's good faith. Good reasons thus exist for a difference in requirements in the two classes of cases: but the power of the Land Department to require an affidavit to the declaratory statement even in pre-emption cases, as it did to declaratory state-

ments under the Coal Land Law, seems not to have been
questioned. (Rev. Stats., §§ 2348, 2349; 1 L. D. 687, par-
agraphs 28, 33.) The regulation calling for an affidavit
to a soldier's declaratory statement under the Home-
stead Law, unlike that considered in *United States* v.
*George*, 228 U. S. 14, is thus a regulation entirely consistent
with the statutory provisions; and being also appropriate,
is valid.

2. *Whether state officers are authorized to administer the
oath.*

The purpose of Congress, in allowing filings to be made
by an agent, was to facilitate the acquisitions of home-
steads by soldiers living at a distance from the land to
be settled on. To their declaratory statements the several
statutes [1] which provide for the administering of oaths by
registers and receivers, or by the clerks of courts or United
States commissioners in the district wherein the land is
situated are obviously not exclusively applicable, if ap-
plicable at all. And plainly the provision of Rev. Stats.,
§ 2293, relating to affidavits before the commanding
officers of soldiers actually engaged in service, is inap-
plicable. The requirement of an affidavit to the declara-
tory statement, to be made by soldiers living elsewhere
than in the land district, can be complied with only if
an oath before some officer other than those specifically
named in those statutes is recognized as being within the
authority of law. It follows that to carry out the duties
imposed by law, the Land Department was called upon to
make appropriate provision for the administering of oaths
in such cases; and the provision that soldiers' declaratory
statements, when filed by agent, "may be executed before
any officer having a seal and authorized to administer
oaths generally," is both appropriate and "not inconsist-

---

[1] Rev. Stats., §§ 2246, 2290, 2294; Act of June 9, 1880, c. 164, 21
Stat. 169; Act of May 26, 1890, c. 355, 26 Stat. 121; Act of March 11,
1902, c. 182, 32 Stat. 63; Act of March 4, 1904, c. 394, 33 Stat. 59.

ent with law." Ever since the decision in *United States*
v. *Bailey*, 9 Pet. 238, 255, it has been held that an oath
administered by a state magistrate, in pursuance of a
valid regulation of one of the departments of the Federal
Government, though without express authority from Con-
gress, subjects the affiant to the penalties of the federal
statute against false swearing. See *Caha* v. *United States*,
152 U. S. 211, 218.

The indictment charges a crime under the laws of the
United States. Judgment of the District Court is reversed
and the case is remanded for further proceedings in con-
formity with this opinion.

                                   *It is so ordered.*