## CENTRAL R. CO. OF NEW JERSEY v. DUFFY, Internal Revenue Collector.

(Circuit Court of Appeals, Third Circuit. May 3, 1923.)

No. 2925.

Internal revenue ⊛7—Railroad company held entitled to deduction for cost of betterments on leased property; "additional rentals."

Under Income Tax Act Sept. 8, 1916, § 12a (Comp. St. § 6336l), authorizing deduction by a corporation of "all the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title," money expended within the year by a railroad company for additions and betterments to leased lines or facilities, necessary to maintain the properties in good order and repair and in condition for efficient use, which is required by the terms of the leases, is money paid as additional rentals, and is deductible from gross income of that year, and not subject to be prorated through the remaining years of the leases.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action by the Central Railroad Company of New Jersey against Charles V. Duffy, Collector of Internal Revenue for the Fifth District of New Jersey. Judgment for plaintiff, and defendant brings error. Affirmed.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Walter G. Winne, U. S. Atty.; of Hackensack, N. J., and Frederic M. P. Pearse, Asst. U. S. Atty., of Newark, N. J. (A. Calder Mackay and Carl A. Mapes, both of Washington, D. C., of counsel), for plaintiff in error.

William A. Barkalow, of Freehold, N. J. (George Holmes, of Jersey City, N. J., and Charles E. Miller, of New York City, of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This action was instituted by the Central Railroad Company of New Jersey against Charles V. Duffy, collector of internal revenue of the United States for the Fifth district of New Jersey, to recover $72,010.22, with interest from June 15, 1917, paid under protest on assessment made for the taxable year of 1916. The case was tried to the court without a jury on an agreed statement of facts, and judgment was rendered for the complainant for $70,980.03, with interest. Of this amount defendant concedes that complainant is entitled to recover $37,781.54.

The gross income of the railroad for 1916 was $35,854,392.03, from which it was conceded that there should be deducted as maintenance and operating expenses $30,112,403.68, leaving a net income of $5,741,-988.35. From this amount complainant contends that there should be a further deduction of $1,659,924.33 spent for (1) additions and betterments to leased railroads and branches; (2) construction of, and extensions to, piers; and (3) dredging at piers. If these deductions are made, it would reduce the net income of the railroad from $5,741,-988.35 to $4,082,064.02, and the taxes of $70,980.03, paid on the $1,659,924.33, should be allowed complainant. These allowances from the gross earnings must be made, if at all, under the following provision of the Act of September 8, 1916 (Comp. St. § 6336l):

"Sec. 12 (a). In the case of a corporation, joint stock company or association, or insurance company, organized in the United States, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—

"First. All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity."

It is admitted that the complainant was in possession of these properties under leases, in some cases for long terms, and that it has no equity in them, had not taken, and was not taking, title to them, and the expenditures were made within the year 1916. The real question is whether these expenditures, aggregating $1,659,924.33, were, as defendant contends, "capital expenditures," or were, as complainant contends, ordinary and necessary expenses and rentals paid within the year, as a condition to the continued use and possession of the properties in question. If these expenditures belong to the former class, they are not deductible; if to the latter, they are.

The Central Railroad held the Lehigh & Susquehanna Railroad and its branches under a lease whose term began April 1, 1871, and ex-

tends not beyond 999 years from November 4, 1868, less one day. Under the terms of the lease, the complainant was "required to maintain and perpetuate said railroad and branches and to maintain and keep the same in good order and repair and fit for efficient use at its own cost and charges," and "to well and efficiently operate said railroad," it being "the true intent and meaning [of the lease] that the demised premises shall be so worked and maintained by the plaintiff as to secure the largest amount of revenue possible therefrom." For such work and materials as were required for repairing, renewing, improving, and increasing weight of rails, yard tracks, water supply facilities, bridges, equipment and facilities, generally called "additions and betterments," the Central Railroad spent $103,496.68. It was admitted that this sum "was expended by plaintiff during the calendar year 1916 for additions and betterments necessary to maintain and perpetuate said Lehigh & Susquehanna Railroad and branches and to keep and maintain the same in good order and repair and fit for efficient use, under the terms of the said lease."

The Central Railroad was in possession of the Wilkes-Barre & Scranton Railroad by virtue of a lease which is dated May 1, 1888, and runs during the life of the charter less one day. This lease contains the same covenants as to operation and efficiency as does the lease in the case of the Lehigh & Susquehanna Railroad, and in addition provides that, if the covenants are broken and not performed upon notice, and if the covenants in the lease of the Lehigh & Susquehanna Railroad are broken and that road reverts to the lessor, the Wilkes-Barre & Scranton Railroad shall also revert to the lessor. The complainant expended on building or renewing a station and retaining wall and bridge at Scranton $2,507.35. It was admitted that this money was expended in the year 1916 for "additions and betterments necessary to maintain and perpetuate said Wilkes-Barre & Scranton Railroad and to keep and maintain the same in good order and repair and fit for efficient use, under the terms of the aforesaid lease."

The complainant was in possession, as tenant in common with the Philadelphia & Reading Railroad Company, of the Allentown Terminal Railway under a lease for 999 years from July 10, 1889. The lease contained practically the same covenants as did the other two leases. The Central Railroad spent $232.31 as its share on improvements, interchange and rearrangement of tracks, etc. It was admitted that this amount was spent in 1916 "as its share of the cost of additions and betterments to said Allentown Railroad which were necessary for the operation and maintenance of said railroad in good working order."

During the year 1916 complainant held Ogden Mine Railroad, within the state of New Jersey, for a term of 999 years. Under the terms of the lease, complainant is "required to at all times maintain and keep said railroad and all its appurtenances in good repair and condition and in all respects fit for use as a railroad." The lease further provides that, if the complainant "shall fail to perform any of the covenants contained in the lease, within a reasonable time after request in writing so to do, then the lease may be terminated and de-

clared forfeited and at an end." It was admitted that $855.22 was expended by complainant in 1916 "for additions and betterments to said railroad necessary to maintain and keep the same in good repair and condition and in all respects fit for use as a railroad."

The complainant in 1916 was in possession of the Dover & Rockaway Railway under a lease dated April 26, 1881, for 999 years from April 1, 1881. The lease provided that "plaintiff is required at all times to maintain and keep the said railroad and all its appurtenances in good repair and condition and in all respects fit for use as a railway." $6,966.23 was spent in installing a telephone system on the road, renewing a bridge at Dover, increasing weight of rails, and improving track material. It was admitted that these expenses were "for additions and betterments to said Dover & Rockaway Railway necessary to maintain and keep said railway and its appurtenances in good repair and in condition in all respects fit for use as a railway under the terms of the aforesaid lease."

New York City entered into a lease, for what is known as Pier 9 in that city at the foot of Carlisle street, with the Lehigh Valley Railroad Company, dated January 13, 1914, and assigned it to the complainant. The city covenanted to condemn all the interest of private owners in Pier (old) 9, and the complainant agreed to pay the entire cost of condemnation and to build, and in pursuance thereof did build, Pier (new) 9, a stone bulkhead wall, sheds on the pier, and a wharf extending 50 feet inshore from the bulkhead. It agreed to pay rent at the annual rate of 27½ cents per square foot for that portion not acquired, and $1 for that portion acquired, from private owners. The lease also provided, if the entire cost of condemnation and improvements to the complainant was less than $2,750,000, it was to pay in addition 5½ per cent. on the difference between the $2,750,000 and the actual cost, but if the cost was more than $2,750,000 the complainant was to be credited on its average annual rental with 5½ per cent. on the difference for a term of 39 years, the lease otherwise being for a term of 10 years. The lease contained other provisions, under certain contingencies not here material for the extension of the term. The city could terminate the lease at any time, if complainant failed to perform any of its covenants. In 1916, complainant spent in the work provided for by the lease $1,525,308.72.

Complainant was in possession of Pier 80 at the foot of West Fortieth street and Pier 46, North River, in 1916, in New York City, under leases for a 10-year term from the city. Under these leases complainant was required to do such dredging as the commissioner of docks of the city considered necessary. Complainant did dredging which the commissioner considered necessary, and for which it spent $28.72 on the one, and $38.10 on the other. The leases provided that the city could terminate them if complainant failed to observe their covenants.

Under two other leases from the city complainant was in possession of extensions to Piers 39 and 46, North River. These leases required the complainant to build extensions to these piers, and in so doing it spent $6,003.78 and $14,486.32 on each extension, respective-

ly. If complainant failed to perform the covenants of the leases, the city had the right to terminate them.

All these various properties, of which the Central Railroad was in possession under leases and on which it expended the $1,659,924.33, with their improvements, temporary and permanent, with their "additions and betterments," revert to the lessors upon the expiration or termination of the leases.

Were these expenditures ordinary and necessary expenses paid within the year 1916 as a condition to the continued use and possession of the properties? The force and effect of the provisions of the lease and of the stipulated facts require an affirmative answer to this question. Article 140 of regulation 33 provides that:

"The cost of erecting permanent · '* * * improvements on ground leased by a company, is held to be an additional rental and is therefore a proper deduction from gross income, provided such buildings and improvements, under the terms of the lease, revert to the owner of the ground at the ·expiration of the lease. In such case, however, the cost will be prorated according to the number of years constituting the term of the lease and the annual deduction will be an aliquot part of such cost."

This regulation is the interpretation of. the statute by the department to which its enforcement is entrusted. It is conceded by both parties that the expenditures, for these improvements are "additional rentals." Consequently the expenditures should be deducted from the gross income in order to ascertain the net income on which the tax must be paid. The real question is as to the time when the deduction should be made. The government contends that they should be prorated in each case according to the number of years constituting the lease, and that an aliquot part only should be deducted annually. The complainant, on the other hand, contends that they are rentals paid within the year 1916 as a condition to the continued use and possession of the properties and should be deducted for that year. A regulation of a governmental department charged with the enforcement of an act has the force and effect of law, unless in itself it is unreasonable, inappropriate, and inconsistent with express statutory provision. United States v. Morehead, 243 U. S. 607, 613, 37 Sup. Ct. 458, 61 L. Ed. 926; Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 Sup. Ct. 155, 64 L. Ed. 297.

The question is reduced to this: Is the insistence that these expenditures be prorated in each case according to the number of years constituting the term of the lease, and that the aliquot part be deducted annually, inconsistent with the express provisions of the statute? The statute expressly provides that all such rentals "paid within the year" may be deducted "from the gross amount of income received within the year," in order to ascertain the net income to be taxed. The evident intention of the statute is that the deduction of such rentals shall be made from the gross income "within the year" in which they were paid. McCoach v. Minehill Railway Co., 228 U. S. 295, 304, 33 Sup. Ct. 419, 57 L. Ed. 842. There is no hint in the statute that they shall be prorated over the term of years of the lease. We think the provisions of the statute are plain; but, if there be doubt, that

doubt must be resolved against the government. Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211. That part of the regulation providing that only an aliquot part of such rentals shall be deducted each year during the life of the lease, we think, is inconsistent with the plain provisions of the statute, and therefore the decree of the District Court is

Affirmed.