## UNITED STATES v. ABELOW.

District Court, S. D. New York.
April 14, 1936.

Martin Conboy, Sp. Asst. to Atty. Gen., for the United States.

Donovan, Leisure, Newton & Lumbard, of New York City, for defendant.

BYERS, District Judge.

The defendant is charged, in an indictment containing two counts, with committing perjury, and has filed a demurrer.

The basis of the charge is that on September 28, 1934, in this district, he signed and swore to an affidavit, before a competent notary public, which affidavit he knew to be false in two particulars:

(a) That the export to Bolivia of 15 machine guns manufactured by Colts Patent Fire Arms Manufacturing Company of Hartford, Connecticut, had been authorized by the State Department of the United States Government.

(b) That a copy of the export bill of lading or other evidence of exportation, covering the export of 15 machine guns from the United States to Bolivia, was on file and readily accessible for inspection by an authorized official of the United States.

Of course the defendant by demurring admits that the affidavit was false, but seeks to avoid going to trial, because of asserted infirmities of the indictment.

The affidavit was signed and sworn to, in order that the manufacturer of the machine guns might avoid the payment of the tax imposed by section 610 of the Revenue Act of 1932, 26 U.S.C.A. § 1420 et seq. note (of 10% of the selling price of the firearms), through the operation of section 627 of the same statute, 26 U.S.C.A. § 1420 et seq. note, whereby section 1121 of the Revenue Act of 1926, 44 Stat. 121, 26 U.S.C.A. § 1125, is called into play; that provision is to the effect that "under such rules and regulations as the Commissioner with the approval of the Secretary may prescribe" such taxes "shall not apply in respect of articles sold or leased for export * * * and in due course so exported * * *."

Article 3 of Regulations 46 provides that this tax is payable by the manufacturer upon all sales "whether made directly or through an agent * * *."

Section 626 of the Revenue Act of 1932, 26 U.S.C.A. § 1420 et seq. note, provides that the person liable for the tax shall make monthly returns under oath "and pay the taxes imposed by this title to the collector" where his principal place of business is located. And that without assessment or notice by the latter official the tax shall be due and payable at the time fixed for filing the return.

Article 67 of Regulations 46 calls for the making of the return on form 728.

Thus it will be seen that if during September, 1934, the Colt Company made a sale of these 15 machine guns, it would have been required to make a return and pay the tax arising upon that sale, according to its return for that month, unless the sale were for export and that fact were made to appear in accordance with the regulations.

The latter are as follows (Regulations 46):

"Art. 74., *Sales for Export.*—In order for a sale to be exempt from tax under section 1121 it is necessary that two conditions be met, namely, (1) that the article must be identified as having been sold for export and (2) that it must have been exported in due course.

"An article will be regarded as having been sold for export if the manufacturer has in his possession at the time title passes or at the time of shipment (whichever is prior), (a) a written order or contract of sale showing that the manufacturer is to ship the article to a foreign destination; or (b) where delivery by the manufacturer is to be made within the United States, a sworn statement from the purchaser showing (1) that the article is purchased to fill existing or future orders for delivery to a foreign destination; or that the article is purchased for resale to another person engaged in the business of exporting who will export the article, and (2) that such article will be transported to its foreign destination in due course prior to use or further manufacture and prior to any resale except for export.

"In these cases the manufacturer, for a period of six months from the date when title passes or the date of shipment (whichever is prior), is excused from paying tax on the article sold. If within such period the manufacturer has not received, and attached to the order or contract proper 'proof of exportation' (see Art. 75), then the temporary exemption ceases and the manufacturer shall include the tax on the sale of such article in his return for the month in which such 6-month period expires.

"Art. 75. *Proof of Exportation.*—Exportation may be evidenced by (1) a copy of the export bill of lading, or (2) a certificate by the agent or representative or the export carrier showing actual exportation of the article, or (3) a certificate of landing signed by a customs officer of the foreign country to which the article is exported, or (4) where such foreign country has no customs administration, a sworn statement of a foreign consignee covering receipt of the article.

"In any case where the manufacturer is not the exporter, such manufacturer must have in his possession an affidavit from the person to whom he sold the article stating that the article was in fact exported in due course or was sold to another person who in due course exported the article. This affidavit must state what evidence is available which will show that the article was in fact exported in due course prior to use or further manufacture and prior to resale in the United States other than for export. Such evidence must be that referred to under either (1), (2), (3), or (4) above, and the affidavit must show where such evidence is readily available for inspection by Government officers.

"In all cases the sales records together with the evidence of the proof of exportation must be preserved by the manufacturer for a period of at least four years from the last day of the month following the sale, and must be readily accessible for inspection by internal revenue officers.

"In any case where the manufacturer does not have in his possession within the 6-month period proof of exportation as outlined herein, the manufacturer must pay the tax involved. If proof of exportation later becomes available, a claim for refund of any tax paid may be filed on Form 843, or a credit may be taken upon any subsequent monthly return, but such action must be taken within the 4-year period of limitation prescribed by section 3228, United States Revised Statutes, as amended."

The foregoing establish the statutory and regulatory background of this indictment, except as to the Joint Resolution of Congress bearing date of May 28, 1934, to be hereinafter noted.

It will be seen that the false affidavit of the defendant was the document falling within so much of Article 75 of Regulations 46 as applies when the manufacturer is not the exporter.

It is alleged in the second count, but not the first, that the Curtiss-Wright Export Corporation was the purchaser of these machine guns; the first count states that the defendant's affidavit was an affidavit of export. The language is: "the said defendant made a written declaration in behalf of Curtiss-Wright Export Corporation, to wit, an affidavit of export, authorized by the Revenue Laws of the United States and the regulations duly promulgated thereunder, in which it was required to be stated that articles had been in due course exported from the

United States, which said affidavit was sent, * * * in behalf of Curtiss-Wright Export Corporation to the Colts * * * Company * * *, the manufacturer of said articles, in which * * * the defendant did unlawfully * * * and contrary to his said oath state and subscribe that the State Department * * * had authorized the export of * * * 15 machine guns, to Bolivia, which * * * was a material matter which by a law of the United States was required to be truly stated under oath, and the defendant * * * did not believe the matter so stated by him to be true * * *" and that he knew it to be false.

As to the first count then, the charge of perjury is directed to the false statement that the State Department had authorized the export of 15 machine guns to Bolivia.

The second count deals with another false aspect of the same affidavit, and the pertinent parts of the charge are: "* * * the defendant made * * * an affidavit of export, authorized by the Revenue Law * * * and the Regulations duly promulgated thereunder, which required the purchaser of articles exported from the United States to specify the evidence of exportation * * * which said affidavit was sent * * * in behalf of Curtiss-Wright * * *, the purchaser of articles exported * * * to the Colts * * * Company * * *, the manufacturer of the articles exported, in which said written declaration the said defendant did unlawfully, wilfully * * * and contrary to his said oath state and subscribe that a copy of the export bill of lading or other evidence of exportation covering the export of 15 machine guns * * * was on file and readily accessible for inspection by an authorized official of the United States which said statement * * * was a material matter which by law * * * was required to be truly stated under oath * * * and the said defendant * * * did not believe the matter so stated by him to be true and the said matter was * * * false as the defendant well knew," etc.

The attacks upon the indictment may be briefly summarized as follows:

*First:* That the false statement concerning the authorization by the State Department was immaterial, because it was the fact of export, and not the fact of

authorization, which was required to be shown.

*Second:* That Article 75 of the Regulations respecting the purchaser's oath was without legal warrant, and therefore the concededly false affidavit does not support a charge of perjury.

*Third:* That the indictment does not allege that the untrue affidavit was that of the purchaser.

In connection with the first contention, it must be understood that between May 28, 1934, and November, 1935, a Joint Resolution of Congress (48 Stat. 811) had been declared effective by Presidential proclamation of the former date (No. 2087, 48 Stat. 1744), the presently material portions of which read as follows:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That if the President finds that the prohibition of the sale of arms and munitions of war in the United States to those countries now engaged in armed conflict in the Chaco may contribute to the reestablishment of peace between those countries, and * * * he makes proclamation to that effect, it shall be unlawful to sell, except under such limitations and exceptions as the President prescribes, any arms or munitions of war in any place in the United States to the countries now engaged in that armed conflict, or to any person, company, or association acting in the interest of either country, until otherwise ordered by the President or by Congress.

"Sec. 2. Whoever sells any arms or munitions of war in violation of section 1 shall, on conviction, be punished by a fine not exceeding $10,000 or by imprisonment not exceeding two years, or both."

The defendant compares section 1121 of the Revenue Act of 1926, with the foregoing, and points out that the exemption from the manufacturer's tax depended upon a showing of export of the 15 machine guns, and that the transaction forbidden by the Joint Resolution quoted, is a sale thereof in any place in the United States to one of the countries in question.

This difference, the defendant argues, means that the false statement in the affidavit, that the State Department had authorized the export, "did not tend to prove or disprove the issue" (which was the manufacturer's exemption from the tax) and "is mere surplusage."

If this is sound, it may be asked why the affidavit was made at all.

The sale of the machine guns presumably was made in this country, by the Colts Company to Curtiss-Wright. On the face of things it was a taxable transaction to the former, and could not be rendered otherwise unless it was for export; in order to establish the latter, the requirements of the tax law and regulations had to be met. This could not be done incompletely or casually; export "in due course" was the necessary showing, and that meant a literal, not a figurative, transaction of export.

The defendant's brief makes it clear that the export of arms to Bolivia could not be prohibited until a treaty between that country and this had been denounced. No such action was taken.

Congress therefore did not in direct terms forbid the export of munitions of war, but it did prohibit the making of sales in this country of such articles, except under permitted exceptions.

It is not necessary to stop to inquire whether by indirection Congress accomplished a result which was not otherwise attainable; this legislation has been held to be unconstitutional (U. S. v. Curtiss-Wright Export Corporation et al. [D.C.] 14 F.Supp. 230) and it becomes necessary to consider whether that decision requires that this demurrer be sustained as to the first count.

The court need not close its eyes to what any one else can see, namely, that the saving of a 10% tax by the manufacturer could not be a subject of indifference—commercially—to the purchaser. The materiality of the affidavit, in the practical sense, is not thought to be wholly unrelated to its materiality in the legal sense, although it is the latter aspect of the matter alone which must control the decision of the demurrer.

Having in mind that the manufacturer was required to be in a position (not being the exporter) to demonstrate the fact of export by possession of an affidavit from the Curtiss-Wright Company "stating that the article (the 15 machine guns) was in fact exported in due course or was sold to another person who in due course exported the article" (Reg. 46, Art. 75) it is apparent that export in due course was export, among other things, that was not in violation of law. A dictionary definition of "due" is lawful; another is "suitable."

The Curtiss-Wright Company, having therefore assumed to provide an affidavit to establish export in due course, undertook a task which was material to the issue of exemption from the tax otherwise payable by the manufacturer; the falsity of that affidavit was a direct, not a collateral or immaterial, aspect of the main issue.

The affidavit did not become immaterial because this court is of the opinion that the said Joint Resolution lacked constitutional validity. The authorization falsely stated to have been procured from the State Department affected the due course requirement of the regulations, but it did not constitute the whole showing of export which was required in order that tax exemption be established.

That was the main issue, and the defendant's affidavit tended to support it, and was therefore material to it. Such will be the theory of this decision as to the first count, unless the cases relied upon by the defendant point to a different result.

Morris v. United States (C.C.A.) 261 F. 175: A conviction for perjury was reversed, where it appeared that the false testimony was given in connection with a petition for the return of goods seized by a receiver in bankruptcy from the petitioner who had obtained possession from the bankrupt, four days before bankruptcy.

The false statements in connection with the petition were deemed to be immaterial, because the goods were taken from him illegally and, even if he lied under oath in order to get them back, his legal right to possession was not affected thereby. In other words, he could have prevailed against the receiver without false swearing, so that, having indulged therein, he could not be prosecuted criminally therefor. To apply that decision to these facts, it must be shown that the tax exemption of the Colts Company could have been based upon a truthful affidavit, or none at all.

For reasons which have been discussed, it is not thought that this has been demonstrated.

Clayton v. United States (C.C.A.) 284 F. 537: A conviction for perjury was reversed, the defendant having testified as

a witness before the grand jury that he had not been intoxicated during a named period. He was promptly indicted and convicted by the trial jury.

He was a witness before the grand jury because that body was inquiring into sales of liquor in a given territory, and he denied making purchases. That was the extent of the pertinent issues, and the question of the witness's own personal experience would clearly lie outside the zone of materiality.

The case has no present bearing.

Kuskulis v. United States (C.C.A.) 37 F.(2d) 241: Defendant had been convicted of perjury in that, at a trial in which subornation was the charge, he had falsely testified that he was not present at a certain place, while in truth he was. The conviction was reversed because of an improper charge, and because the defendant's presence at the place in question would not have determined his guilt of subornation; that is, he might have been present, and still been innocent of subornation. Therefore the question of the defendant's presence at the place was really collateral to the true issue at the former trial.

If this defendant's affidavit were collateral to the exemption of the Colts Company from the tax in question, this decision would be an authority in defendant's favor. It is thought that the affidavit was in the direct line of requirement concerning the tax exemption, not collateral.

United States v. Singleton (D.C.) 54 F. 488: A demurrer to an indictment was sustained, that alleged that the defendant had falsely sworn that one West had resided on or cultivated certain land in 1882. Apparently he had so deposed in connection with the making of final proof in a homestead proceeding on the part of West.

The court decided that the indictment did not recite facts showing, nor did it allege, that the testimony of the defendant was material to the homestead proceeding; it was not alleged, nor did it appear from the indictment, that the residence or cultivation in 1882 was material to the issue depending.

Here the indictment in terms alleges that the defendant's affidavit "was a material matter which by law of the United States was required to be truly stated under oath," as to the authorization by the State Department, and as to the copy of the export bill of lading.

United States v. Cameron (D.C.) 282 F. 684, 685: A demurrer was sustained to an indictment for perjury, based upon an affidavit which falsely stated the facts concerning contributions to the defendant prior to his candidacy for a United States Senatorship at a general election. Under the statute involved, this was held not to be material to the question of the limitation upon the amount of his expenses in connection with the election. The limitation by statute went to the expenses and not to the contributions.

There is no such distinction here involved.

It is thought that the first ground of demurrer, which applies to the first count only, is insufficient.

■ Turning now to the objection that Article 75 of the Regulations (46) is without authority in the Revenue Law, it is to be observed: The article was adopted pursuant to section 1121 of the Revenue Act of 1926, which provides that "under such rules and regulations as the Commissioner with the approval of the Secretary may prescribe" such taxes "shall not apply in respect of articles sold * * * for export * * *."

Attention is called to section 1102 (44 Stat. 112, 26 U.S.C.A. § 54 (a, b) and note) from which the following is taken:

"(a) Every person liable to any tax imposed by this Act [chapter], or for the collection thereof, shall keep such records, render under oath such statements, make such returns, and comply with such rules and regulations as the Commissioner, with the approval of the Secretary, may from time to time prescribe.

"(b) Whenever in the judgment of the Commissioner necessary he may require any person, by notice served upon him, to make a return, render under oath such statements, or keep such records as the Commissioner deems sufficient to show whether or not such person is liable to tax."

It is urged that there is no provision in terms which permits the Commissioner to promulgate a regulation "requiring a person other than the taxpayer to make a statement under oath, with respect to the taxes imposed by title IV of the Revenue Act of 1932 [26 U.S.C.A. § 1420 et seq. note]."

That contention is thought by defendant to lead to the conclusion that this untrue affidavit may not therefore constitute the basis for a perjury indictment.

The regulation assailed had for its object the purpose of establishing whether the manufacturer's tax in question should apply to articles sold for export. It was reasonable to frame such regulations in order to cover a transaction in which the export should be that of a purchaser from the manufacturer, because the law did not confine the exemption to exports *by* the manufacturer. In such a case, the latter could not swear to something which might be and probably would be beyond his knowledge.

It was not unreasonable for the Commissioner to suppose that an affidavit could safely be relied on, where the purchaser conducted or would assume responsibility for the export.

American standards of conduct in the taking of an oath customarily rise to such heights of dependability.

Therefore it cannot be said that the promulgation of Article 75 of Regulations 46 was the exercise of something in excess of the power conferred by section 1121 of the 1926 Revenue Act. On the contrary, the regulation is thought to be reasonable and necessary for the enforcement of the statute, as that requirement has been judicially interpreted. The Government relies upon United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926, and the rule of decision in that case will be found to apply to the situation here presented, with direct force. The opinion distinguishes the case of Williamson v. U. S., 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278, upon which this defendant relies, and seems to contain the latest expression of the Supreme Court upon the validity of a regulation substantially similar to that here involved, so far as concerns its adherence to the statute under which it was issued.

This objection to the indictment is untenable.

■ The final argument of defendant is addressed as to the first count, in that it fails to allege that the Curtiss-Wright Company was the purchaser of the machine guns or that they had been sold to it by the Colts Company, and hence the affidavit of the defendant is not brought into legal relation with Revenue Law and the Regulations; and as to the second count, that the affidavit is not alleged to have been that of the Curtiss-Wright Company therein described as the purchaser of the machine guns.

As to the second count, the argument is plainly mistaken. The affidavit is said to have been "sent, caused to be sent and intended to be sent in behalf of Curtiss-Wright Export Corporation, the purchaser * * *," and to have been an affidavit of export authorized by the Revenue Law and Regulations, "which required the purchaser of articles exported from the United States to specify the evidence," etc.

These averments, taken together, sufficiently allege that the affidavit of the defendant was that of the Curtiss-Wright Export Corporation, the purchaser of these articles.

■ The objection to the first count is more serious.

The failure to allege that the Curtiss-Wright Company was the purchaser, or that there had been a sale to it, is sought to be overcome by the argument that the designation of the untrue document as an affidavit of export "in behalf of Curtiss-Wright * * *" is an indirect but legally sufficient allegation that the latter was the purchaser, because the manufacturer was named and it necessarily follows that no one else except the purchaser could have made the affidavit, under the regulations heretofore quoted, of which the court must take judicial notice.

Therefore that this amounts, by a process of elimination, to an allegation that the affidavit was made by the purchaser, and hence there must have been a sale to it.

No exception is taken to so much of the indictment as has to do with the competency of the notary public to administer the oath, or with reference to the allegation that the defendant wilfully and contrary to his oath stated and subscribed to a material matter which he did not believe to be true.

It is argued that there is no sufficient showing that the oath was taken in a case authorized by the laws of the United States. Conformity to such a requirement is needed if the offense charged is to come within the statute (title 18 U.S.C. § 231 [18 U.S.C.A. § 231]) said to have been violated.

The cases upon which defendant relies are: Danaher v. United States (C. C.A.) 39 F.(2d) 325, 330, and United States v. Wilcox, Fed.Cas.No.16,692.

In the former a conviction for subornation of perjury was reversed by a divided court, for a number of reasons, one of which was that the indictment failed to allege that a false affidavit, which was given by a surety for bail, was not alleged to have been filed in a case in which the defendant, for whom bail was given, was held on "a charge of having committed any crime or offense against the United States; nothing to show any lawful ground or reason for his giving a recognizance, and hence the right of the officer taking it to administer an oath to Schell as surety."

The opinion continues:

"* * * But there is nothing in the affidavits in these counts, or in the charges contained therein, that show any matter or proceeding pending before the commissioner or elsewhere against Sneider [the person for whom bail was given], in which a law of the United States authorized the taking of Sneider's recognizance, or the administration of an alleged oath to the surety."

The immediately foregoing quotation follows a passage reading:

"Perjury, however, may be committed in an ex parte affidavit, under the terms of this section [the instant statute] and other statutes. But in such prosecutions the affidavit itself, or independent allegations of the indictment, or both, show the procedure in which the affidavit is lawfully taken, that is, the inducement." (Citing cases.)

To apply this rule at bar, it appears:

In this indictment the affidavit is not set forth, and the inquiry then is whether the independent allegations of the indictment show the procedure in which the affidavit was lawfully taken.

The procedure is pleaded by allegations:

(a) That the defendant made a written declaration in behalf of Curtiss-Wright Export Corporation.

(b) That it was an affidavit of export, authorized by the Revenue Laws and Regulations requiring it "to be stated that articles had been in due course exported from the United States."

(c) That it was sent in behalf of Curtiss-Wright to the manufacturer of "said articles."

The question is whether the omission to state (a) the fact of purchase, and (b) the fact that the Colts Company was the manufacturer and the Curtiss-Wright Company was the seller, constitutes a failure to show the procedure in which the affidavit was lawfully taken.

While the indictment leaves something to be desired as a pleading, it cannot be said that these omissions fail to identify the procedure of which the affidavit was a part, sufficiently to justify the conclusion that no crime is charged. The missing averments would merely have stated facts which are already sufficiently though obliquely alleged, to apprise the defendant of the nature of the charge against him.

Perhaps in the days when strict attention was paid to matters of form, and when precision of pleading was deemed to be an end in itself, the demurrer might have been sustained, but it is thought that title 18 U.S.C. § 558 (18 U.S.C.A. § 558), protects this indictment, because the substance of the offense of perjury is deemed to have been included within its corners.

United States v. Wilcox, supra, and its citations have been examined. The indictment was held to be insufficient on three grounds and "was evidently drawn during the disorder and hurry of the circuit."

The charge of perjury rested upon what was alleged on the part of the defendant on "an examination of certain persons charged with crimes or offenses against the laws of the United States."

As to this the court says: "It was also objected, that it does not appear, from the indictment, what charge was under investigation before the commissioner, and that, therefore, the court cannot see that the testimony alleged to have been falsely given was material. In this respect, also, the indictment is defective."

It has been the endeavor herein to point out that this indictment reveals what the case was in which a law of the United States authorized the oath to be administered, and that it was material thereto.

The foregoing considerations lead to the conclusion that the demurrer must be overruled, and it will be so ordered. Settle order.