## LUMLEY v. WABASH RY. CO.

### (Circuit Court, E. D. Michigan. August 16, 1895.)

1. JUDICIAL NOTICE—FOREIGN CITIZENSHIP.

The court will take notice of the fact that Canadian citizens are "citizens and subjects of a foreign state," for the purpose of conferring jurisdiction on a federal court.

2. ALLEGATIONS IN PLEADING—CONCLUSIVENESS.

One who obtains a removal from a state court by a petition alleging that the complainant is "an alien and citizen of" a foreign state cannot object to the jurisdiction of the federal court in another suit, which is a mere continuation of the former one.

3. SAME—ADMISSIONS.

An allegation by plaintiff that a paper was signed by him after hearing it read, but that only part was read to him, is without any weight, when preceded by an admission that he did not know whether or not all of it was read.

4. SIGNATURE OF PAPER—IGNORANCE OF CONTENTS.

One can avoid the consequences of his failure to read a paper before signing it only by clear proof that his failure to do so was induced by fraud or excusable mistake.

5. LACHES—CANCELLATION OF RELEASE—MISTAKE.

A bill to cancel a release given by plaintiff of all claims on account of injuries received by plaintiff in a railroad accident alleged that it was given under a mistake caused by the statements of defendant's physician that the injuries were slight and temporary, and were confined to his head and arm, and that a pain in his shoulder was merely sympathetic, but that five months later he was told by an eminent surgeon that the right shoulder was permanently injured. It appeared that he then wrote defendant's surgeon that he would not consider himself bound by the release, and would insist on "his rights"; but he did not offer to return the money paid for the release, or assert a purpose of rescinding it till three years later, when he brought suit. He discontinued this suit to avoid the objection that he had not repaid the money received by him, and brought another suit six months later. *Held,* that he was guilty of laches.

6. PLEADING—STATEMENT OF CONCLUSION.

Allegations in a bill that certain things were done by plaintiff "fraudulently" and "surreptitiously" are mere statements of conclusions, not admitted by a demurrer.

7. LACHES.

Plaintiff's poverty will not excuse delay in the assertion of his rights.

This was a bill by Ephraim Lumley against the Wabash Railway Company. Heard on demurrer.

The complainant is a citizen of the province of Ontario, in the dominion of Canada, and filed his bill in this cause to obtain the cancellation and annulment of a release under seal, by him executed on the 7th day of October, 1890, which discharged and released the defendant from all actions, causes of action, damages, etc., which had accrued to complainant by reason of the alleged negligence of the defendant, whereby the plaintiff, who was traveling in one of the defendant's freight cars, in charge of horses, was injured by the concussion of the cars in making up the train at Detroit. He claims to have suffered, in addition to a fracture of his arm and a slight injury to his head, a severe and permanent injury to his right shoulder; and the release which he seeks to have canceled, it is the claim of the bill, covers, and was intended to cover, only the injury to his arm and head; and he now seeks compensation for the more serious and the permanent injury to his shoulder. For this, in March, 1894, he sued the defendant in the circuit court for the county of Wayne. On the 27th of that month the defendant filed its petition for the removal of the cause to this court, alleging therein that the plaintiff was an alien and a subject of

the queen of Great Britain and Ireland, and that the defendant was and is a corporation organized and existing under the laws of the state of Missouri, and a citizen and resident of said state. An order of removal was made upon this petition, and the transcript from the state court was seasonably filed in this court. The cause thus removed was, by stipulation between the attorneys for the respective parties, discontinued on the 27th day of June, 1894, and on the 19th of September, 1894, the plaintiff, describing himself as "a resident and citizen of the province of Ontario, in the dominion of Canada" (being in terms the same averment of his citizenship as was made in the cause removed and subsequently discontinued), filed his declaration in this court, as commencement of suit, describing the defendant as a corporation organized and doing business under the laws of the state of Michigan. The form of action was case for the alleged negligence of the defendant, whereby the plaintiff suffered the injuries mentioned above, while being transported over the defendant's road; and the declaration also contains a count based upon the alleged failure of the defendant to provide a competent surgeon and physician to treat and care for the injuries of the plaintiff, by reason of which failure and the alleged want of care and skill of the physician employed by the defendant, to whose care the plaintiff submitted himself, the plaintiff did not receive proper treatment, and his injuries were greatly aggravated, and were rendered permanent and incurable, and have disabled the plaintiff, and rendered him wholly unfit to labor or earn his living. The ad damnum of the declaration is $20,000. The defendant pleaded the general issue. The cause came on for trial at the November term, 1894, of this court, and after the close of the evidence the defendant moved the court for an instruction to the jury to find a verdict for the defendant on the ground that the cause of action was barred by the release executed by the plaintiff. The following is a copy of the release in evidence by the defendant:.

"Exhibit A. Form 2,105.

"Whereas, on the 3rd day of October, A. D. 1890, I, Ephraim Lumley, of Ridgetown, Ontario, Canada, was a passenger of the Wabash Railroad Company, and as such passenger was engaged in the discharge of my duty, in caring for horses loaded in car,—said car standing on tracks in R. R. yard, Detroit, Mich., at which time said car wherein I was was run against & upon by a locomotive, giving car heavy shock, whereby I was injured,—on the 3d district, E. division, of said railroad; and whereas, I, the said Ephraim Lumley, received certain injuries, to wit, severe contused and lacerated wound on forehead, right side, fracture of right arm between wrist and elbow, and various injuries and contusions, both internally and externally, in and on various parts of my body; and whereas, I, the said Ephraim Lumley, believe that my injuries are the direct result of the negligence of said railroad company, its officers, agents, and employés; and whereas, the said railroad company denies any and all negligence on the part of itself, its officers, agents, and employés, and denies any and all liability for damages for the injuries so as aforesaid by me sustained, but by reason of an offer of compromise made by me, the said Ephraim Lumley, for the purpose of avoiding litigation, to receive and accept the sum of seventy-five dollars in full accord and satisfaction for all claims for damages which I may or might have, either at common law or by virtue of any legislative enactment of the state of Michigan, for the injuries aforesaid, have paid to me the said sum of seventy-five dollars: Now, therefore, in consideration of the premises, and of the payment to me of the aforesaid sum of seventy-five dollars, the receipt whereof I do hereby acknowledge, remise, quitclaim, and forever discharge the said the Wabash Railroad Company, its leased and operated lines, of and from all actions, suits, claims, reckonings, and demands for, on account of, or arising from injuries so as aforesaid received, and any, every, and all results hereafter flowing therefrom. Witness my hand and seal this 6th day of October, A. D. 1890.

                                                    his
                               "Ephraim  X  Lumley.   [Seal.]
                                                    mark
"Signed, sealed, and delivered in presence of H. W. Morehouse.
"Witnessed by Jno. Kniffen."

Upon the intimation of the court at the close of the argument that this release, being under seal, could not be avoided at law, under the testimony, but only upon a bill in equity, the court, upon the application of the plaintiff, permitted him to withdraw a juror, on condition that he should file a bill in equity in this court within 30 days for the cancellation of said release. In compliance with this condition, the bill of complaint in this cause was filed July 7, 1895. This bill describes the complainant as a "resident of the province of Ontario, dominion of Canada, and a citizen of the dominion of Canada." It sets forth substantially as stated in the declaration the particulars of the accident of the 3d of October, 1890, in the yards of defendant at Detroit; that, except the injuries to his head and the fracture of his right arm, plaintiff was ignorant of the other injuries by him received, and for which he sought compensation in the cause at law; that plaintiff continued his journey to his destination, Danville, Ill., where he arrived October 5, 1890, where his arm was treated by the chief surgeon of the defendant; that on the morning of October 6, 1890, he went to said surgeon's office, where he met one Austin, an agent of defendant, who expressed his desire to settle with plaintiff for the fracture of his arm and the contusion of his head; that said surgeon then and there stated that the contusion was trivial, and that the fracture would be entirely healed in about six weeks, and that plaintiff would be entirely well, and able to resume his regular employment, in not to exceed eight weeks; that plaintiff's wages at that time were $8 per week, and Austin offered to pay plaintiff for eight weeks' time at that rate, and a small sum for such additional medical attendance as he might require,—in all, $75. This proposition complainant accepted, as his bill avers, upon those conditions, viz. "that he should be well in not to exceed eight weeks, and that he would accept the said seventy-five dollars in satisfaction of said injuries so talked about," and executed the release, receiving the $75 therefor. The bill avers that the claim agent, Austin, "pretended to read the paper to which your orator set his mark, but that he read the same with great rapidity. Whether he read all of it, your orator does not know; but your orator charges that he did not, and that the only portion which was read so that complainant could understand it was that relating to the receipt of $75, and the expression 'fracture of the arm.'" The further charge of the bill is that, "in so far as the paper recites that there was a controversy as to the liability of the company, it is false and fraudulent, and was imposed upon your orator fraudulently, and without proper reading on the part of said claim agent, and that your orator never intended to execute any such paper, and no such agreement was ever made between the parties"; that it was executed wholly on the absolute and unqualified statements of defendant's chief surgeon "that complainant would be entirely well and able to resume his employment in not to exceed eight weeks, and the implicit confidence in said statements by said plaintiff, who believed the same to be true, and he would not have set his mark to said paper except for such representations and statements, nor would he have accepted the $75 as satisfaction for the forearm and the wounds on his head"; that, before this settlement, complainant's right shoulder and right part of his body adjacent began to pain him to such an extent as to alarm him, but the surgeon assured him that such pain was merely sympathetic, and arose from the fracture of the arm. Plaintiff returned to his home on the 7th of October, 1890, where his shoulder and the muscles and parts adjacent again distressed him greatly, so that he could not remove his coat alone, and the same was necessarily cut off his person. He denies that any examination was made by the surgeon at Danville of any part of his body, except the forehead and right arm, and asserts that, from the time of complainant's arrival home, his shoulder grew rapidly worse, but, relying upon the assurance given him by the defendant's surgeon, he did not call a physician until the pain had become unendurable, and such as to cause him alarm; that he still suffers from such injuries; that the "injury to the shoulder is permanent, and is variously described by surgeons whom he has consulted as adhesion of the right shoulder joint, atrophy of the muscles and injury to the nerves of the right side, and in addition thereto, and as a consequence thereof, the loss of

mobility of the fingers of the right hand, and that his shoulder has been dislocated and fractured in said collision; that by reason of said injury he has been totally helpless since October 7, 1890, unable to pursue his calling as a carpenter, suffering from excruciating pain day and night, unable to clothe or wash himself or to put on or remove his shoes and other articles of apparel; that for a number of weeks after his return home he believed that the injuries to his shoulder would disappear with the healing of his right arm, but he then discovered that the injury was independent and distinct from the fracture of the forearm, and was permanent, and thereupon notified the chief surgeon of the defendant of such injuries, as additional to those for which said surgeon treated him, and notified the defendant that he should insist that he was not bound by the receipt of seventy-five dollars paid to him at Danville, Illinois, as a consideration of the release, and that he should insist upon his rights in the premises"; that he kept no copy of the release signed by him, and he disclaims recollection after his return home of the contents thereof, except that it recited the receipt of $75, and something about the fracture of the arm, so that he was unable to tell his friends or his attorney what the contents of that paper were. The bill further alleges that, "in the conversation preceding the execution of the release by complainant, nothing was said about any injury, except that to the forearm, and that it was not the intention of the parties to settle any other matter or thing. The complainant denies that he ever freely or deliberately, or with knowledge, executed any paper releasing or discharging the defendant for any injuries to his person whatsoever, except the fracture of the arm and the slight contusion of the brow, and that in so far as said alleged release covers, expressly or impliedly, any other injuries, it was obtained from his surreptitiously and fraudulently; that he is comparatively an ignorant person, unused to such business; had traveled but little on the railroad; that he never had any business, to speak of, with professional persons, and stood in great awe of persons of the eminence and standing of said claim agent and chief surgeon, and trusted entirely to the assurance of the former that he would rapidly recover, and he did not employ counsel, or examine the papers which were prepared for him, but relied upon the good faith and honesty of said officers of defendant; that if said release was not obtained by actual fraud on the part of the officers, and by the suppression from your orator of the truth concerning his physical condition by said surgeon, that then it was given and received under a mutual mistake of the vital facts concerning your orator's injuries; * * * that either said surgeon knew of the same, or surmised the same, and suppressed the facts from your orator, or all the parties, when said alleged release was made by your orator, were in total ignorance of said severe injuries, and said agreement which was arrived at was made under a total, complete, and vital misapprehension of fact on the part of all the parties concerned; and that in either case said alleged release was never binding upon your orator."

As an excuse for the delay in bringing his action, he alleges that he "was without means to enforce his rights against the defendant; that he resides in Ontario, and had scarcely means to meet his necessary living expenses; that his financial condition was such that he was obliged to receive aid from a Masonic association of which he is a member; that he had no money wherewith to fee lawyers to prosecute his claims, and was without the necessary means to pay for proper surgical and medical attendance, although he did receive surgical attendance out of the kindness of heart of local surgeons who were willing to wait for their pay; * * * that during all the years from his said injury, until the present time, he has been unable to earn, and never has earned, a single dollar, although up to the time of his said injury he was well, hearty, and strong, and of full earning capacity, and constantly employed. * * *" He further says, after protesting against the necessity of repaying the $75 and interest, "that in June, 1894, the defendant furnished his attorney with a copy of the release, and, under the instructions of said attorney, complainant tendered on the 28th day of June, 1894, the seventy-five dollars and interest,—in all, $94.60,—which the defendant declined to accept. * * *" The bill recites the commence-

ment of the suits in the Wayne circuit court and in this court, and formally tenders the $91.60 to defendant, and prays that the court will declare the alleged release to be no settlement for the injury to complainant's right shoulder and the adjoining parts of the body, and that the voucher accompanying such release may also be held for naught, and that the court will, by its decree, wholly rescind or so reform the release as to limit its operation to the fracture of the forearm and the contusion of the brow, and in like manner reform the terms of the said voucher, and hold such instruments to be no bar to the recovery of damages by the plaintiff.

To this bill defendant filed a demurrer on several grounds: First. The jurisdiction is not made to appear by any averment in said bill. Second. That, by reason of the terms of the release, the same cannot be altered or set aside on parol testimony of the alleged facts set out in the bill. Third. That the same cannot be set aside as improvident. Fourth. That it cannot be set aside because, as alleged, the plaintiff failed to inform himself of the contents of the release when he signed it. Fifth. That the release cannot be set aside on the ground that the same was executed by complainant in reliance upon the opinion expressed by the surgeon of defendant that "the complainant would be well in not to exceed eight weeks." Sixth. That complainant's expenditure of the $75 paid by defendant, with knowledge of the settlement, for nearly four years, before offering to return it, was a ratification of the settlement, which, once made, was final and binding on complainant. Seventh. That complainant did not on his return home in October, 1890, and particularly after he was advised, as the bill avers, by an eminent surgeon, in March, 1891, of the nature and extent of the injuries to his shoulder, announce his purpose to rescind such settlement, and adhere to such announcement, and offer to return the money, but continued to treat the money as his own until the 28th of June, 1894. Eighth. That the poverty of the complainant, and his inability to fee lawyers, is no excuse for his delay. Ninth. That the delay of complainant from the fall of 1890 and from March, 1891, when he was fully advised of his legal rights, until the spring of 1895, before filing his bill, is such laches as bars the relief prayed.

John F. McKinlay and Alfred Lueking, for complainant.

Alfred Russell, for defendant.

SWAN, District Judge (after stating the facts). 1. The objection that jurisdiction is not made to appear by any averment in the bill is not well founded. The court will so far notice judicially the relation of the dominion of Canada to Great Britain as to recognize the citizens of Canada as "citizens and subjects of a foreign state." Whatever distinction there may be between the citizenship enjoyed by a subject of the queen of Great Britain, resident in the United Kingdom, and that possessed by a citizen of the dominion, or of its constituent provinces, they are both subjects of the same sovereignty, and "citizens of a foreign state," under the act of 1887, defining the jurisdiction of the federal courts. The court will take judicial notice of historical facts recognized by the political power of the nation in treaties and otherwise. Jones v. U. S., 137 U. S. 202, 11 Sup. Ct. 80; Ex parte Lane, 6 Fed. 34. The averment of the bill that complainant is "a citizen of the province of Ontario, in the dominion of Canada," is sufficient to confer jurisdiction on this court, under the statute cited. If this were otherwise, however, the fact that defendant obtained the removal from the state court of the action at law brought by plaintiff, in which exactly the same allegation of citizenship was made, and in its petition alleged as a ground for removal that the complainant is "an alien and citizen of Great Britain," suffices, of

itself, independent of other considerations, to demonstrate that the first ground of the demurrer must be overruled, since the record' in that cause, of which this is a continuation or incident, established the alienage of the complainant. The second objection to the bill it is unnecessary to discuss.

2. The remaining grounds of demurrer may be considered together, as a demurrer for want of equity. There can be no question but that the terms of this release are sufficiently comprehensive to exclude recovery by plaintiff for the injuries from which he is now suffering, although the same were not detailed specifically in the instrument, unless the release can be avoided for fraud or mistake. "A release is held to include all demands embraced by its terms, whether particularly contemplated or not, and direct parol evidence that a certain claim was not in the minds of the parties is not admissible. Deland v. Manufacturing Co., 7 Pick. 244; Hyde v. Baldwin, 17 Pick. 303; Sherburne v. Goodwin, 44 N. H. 271. The surrounding facts and circumstances may, as in other cases, be shown, in order to apply the language of the instrument to its proper subject-matter, and prevent its application to a matter not involved in the transaction. Littledale, J., in Simons v. Johnson, 3 Barn. & Adol. 175; 1 Greenl. Ev. §§ 286, 288." The Cayuga, 8 C. C. A. 188, 59 Fed. 483, 486. In construing a release, "the intent is to be sought from the whole and every part of the instrument, and when general words are used, if it appears by other clauses of the instrument, or other documents definitely referred to, that it was the intent of the parties to limit the discharge to particular claims, courts, in construing it, will so limit it." Dunbar v. Dunbar, 5 Gray, 103, 104; Averill v. Lyman, 18 Pick. 346; Brown v. Cambridge, 3 Allen, 474. There is, however, no need to invoke this rule of construction. The language of this release is its own interpreter. The subject-matter of the instrument is described as "the severe contused and lacerated wound on forehead, right side, fracture of right arm between wrist and elbow, and various injuries and contusions, both internally and externally, in and on various parts of my body." This aggregation of injuries, of simultaneous occurrence, and thus conjunctively stated in the recital, is ostensibly the foundation of the contract referred to in the covenants of the releasor, discharging and releasing the defendant from all actions, suits, etc., arising from "injuries so aforesaid received, and any and every and all results hereafter flowing therefrom"; and for a discharge from liability from these, as a whole, defendant paid the stipulated consideration. The notice to defendant that plaintiff would insist that he was not bound by the receipt of the $75 paid him in settlement at Danville is cogent evidence that he knew, despite his denials, the scope and effect of the release. It is not claimed that complainant was unable, because of mental or physical infirmity, to comprehend the instrument, or that his signature thereto was obtained by any false representations of matters of fact, nor yet that he was unable to read its contents. The charge that Austin read the paper rapidly, but did not read all of it, immediately preceded, as it is, by the admis-

sion that complainant does not know whether he read it all, is without weight. An intentional omission of a material part of the deed would be evidence of fraud, which is not to be presumed, but must be clearly shown; and this averment, not being well pleaded, is not admitted by the demurrer. Dillon v. Barnard, 21 Wall. 430. If it is true that "the only part of the paper so read that he could understand it" was the words "fracture of the arm," and that relating to the $75, complainant was grossly negligent in signing until he knew its full import. He was in the complete possession of his faculties, unaffected by opiates, and so keenly alive to the situation, if his bill states truly, as to make his acceptance of the $75 conditional upon his recovering in a limited time. The presumption is that he knew the contents of the paper he signed. Hazard v. Griswold, 21 Fed. 180; Howland v. Blake, 97 U. S. 625; Insurance Co. v. Nelson, 103 U. S. 548; Curley v. Harris, 11 Allen, 112; Taylor v. Fleckenstein, 30 Fed. 99. If he did not, he can only avoid the consequences of his negligence by clear proof that it was induced by fraud or excusable mistake. Says Gibson, C. J., in Greenfield's Estate, 14 Pa. St. 491:

"If a party who can read will not read a deed put before him for execution, or if, being unable to read, will not demand to have it read or explained, he is guilty of supine negligence, which, I take it, is not the subject of protection at law or in equity."

To the same effect are Upton v. Tribilcock, 91 U. S. 45–50; Railroad Co. v. Shay, 82 Pa. St. 198; Eccles v. Railway Co. (Utah) 26 Pac. 924; Albrecht v. Railroad Co., 87 Wis. 105, 58 N. W. 72.

Under these circumstances, and in the absence of fraud, complainant's case is not aided by the fact that the consideration received in settlement of his claim against the railroad company has proved wholly inadequate to compensate him for the injuries he suffered, and their consequences. "The law," said Lord Wynford in Blachford v. Christian, 1 Knapp, 77, "will not assist a man who is capable of taking care of his own interest, except in cases where he has been imposed upon by deceit against which ordinary prudence could not protect him. If a person of ordinary understanding, on whom no fraud has been practiced, makes an imprudent bargain, no court of justice can release him from it." Willis v. Jernegan, 2 Atk. 251; French v. Shoemaker, 14 Wall. 315, 333; Eyre v. Potter, 15 How. 42, 60; Gavinzel v. Crump, 22 Wall. 308, 321; 1 Story, Eq. Jur. § 244.

Does the complainant's case establish such fraud or mistake as will avoid the settlement? The bill avers that the release, so far as it covers the injuries from which complainant suffers, was obtained from him "surreptitiously and fraudulently," and "that if said release was not obtained by actual fraud on the part of the officers, and by the suppression from your orator of the truth concerning his physical condition, by said surgeon, then it was given and received under a mutual mistake of the vital facts concerning your orator's injuries." So far as the charge of fraud is concerned, it is clearly ill pleaded. It is made in the most general terms, without stating the facts on which the charge rests. The free use of the epithets "fraudulent,"

"fraudulently," and "surreptitiously" neither informs the conscience of the court of the facts of the case upon which it is asked to act, nor enables the defendant to meet the accusation of wrongdoing made against him. The pleading is open to the further objection that it is lacking in certainty and positiveness, and its charges are contingently and alternatively stated. It is not enough to denounce and opprobiously characterize the party or transaction assailed, but the facts should be so stated that the nature of the matter in issue will prima facie warrant the relief sought. Brooks v. O'Hara, 8 Fed. 531; Hazard v. Griswold, 21 Fed. 178; Lafayette Co. v. Neeley, Id. 738; Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476. "A court of equity, when examining a bill of complaint to find a grievance which will justify its interposition, looks to the substantive facts averred in it, not to the adjectives or adverbs which may be added to qualify them." Per Grier, J., in Magniac v. Thomson, 2 Wall. Jr. 254, Fed. Cas. No. 8,957. Such epithets are merely allegations of conclusions of law, which a demurrer does not admit. Ambler v. Choteau, 107 U. S. 586, 591, 1 Sup. Ct. 556; Fogg v. Blair, supra; Dillon v. Barnard, supra; U. S. v. Ames, 99 U. S. 35, 45; Pullman's Palace-Car Co. v. Missouri Pac. Ry. Co., 115 U. S. 587, 6 Sup. Ct. 194.

Whether the bill makes a case for relief on the ground of mistake of fact, it is not necessary to decide. Accepting its statements as sufficient for that purpose, it seems clear that plaintiff's failure to promptly repudiate the settlement is fatal to his claim for rescission. He suffered severe pain in the injured shoulder at the time he executed the release. Without reproaching him for accepting the opinion of the surgeon that the pain was sympathetic, merely, and proceeded from the fractured arm, it appears that it continued and increased in severity from that time; that he was advised by an eminent surgeon as early as March, 1891, that there was a fracture of the right shoulder and atrophy of the muscles in its vicinity on that side, and that his injuries were permanent. His only action on this knowledge and advice was a notification to the defendant's surgeon, mailed several months after the accident, that he should insist that he was not bound by the receipt of the $75 paid him, and that he would "insist on his rights in the premises." He made no offer to return the money paid him, nor did he further assert his purpose to rescind until he brought suit in the state court in March, 1894. His excuse for this inaction, and the failure to return what he had received, is that his poverty prevented. Having discontinued that suit to avoid the objection that he had not returned the money paid him by defendant, he brought his action in this court in September, 1894, after tendering back the amount. Unfortunately for plaintiff, his pecuniary condition will not avail to condone his delay. Hayward v. Bank, 96 U. S. 611, 617; Leggett v. Oil Co., 149 U. S. 294, 13 Sup. Ct. 902. It was his duty to pursue his claim promptly, and not by empty words. Clegg v. Edmondson, 8 De Gex, M. & G. 787, 810. Even the institution of a suit does not of itself relieve a party from the charge of laches. His failure to prosecute it with diligence subjects him to the same consequences as if it had never been brought. Johnston v. Mining Co., 148 U. S. 360, 13 Sup. Ct. 585. He should

have announced his purpose to enforce his claim, and adhered to it. Grymes v. Sanders, 93 U. S. 55; McLean v. Clapp, 141 U. S. 429, 12 Sup. Ct. 29. Instead of this, he remained passive for more than $3\frac{1}{2}$ years after the settlement, before he brought his first action, and for over 3 years after he was advised and convinced that his injuries were permanent and entailed total incapacity to labor, and he permitted nearly 5 years to run before filing this bill. The retention of the money paid plaintiff, and his long acquiescence in the settlement, are not excused by any matter alleged in the bill. He knew in March, 1891, all the facts he now urges for the cancellation of the release, except the exact terms of that instrument, which he made no effort to learn, though he seems to have known its substance and effect. These facts constitute a ratification of the settlement, from which he cannot at this late day recede. The complainant's case is certainly pitiable, but it is impossible to afford him relief consistently with the principles of equity. He has by his own remissness erected an insuperable obstacle to the aid of the court. The demurrer must be sustained, and the bill dismissed.