## SIMMONS et al. v. UTAH COPPER CO.

(Circuit Court of Appeals, Eighth Circuit. November 17, 1926.)

No. 7313.

1. **Compromise and settlement** ⚖=23(3)— Finding that settlement of claim for death of employee was not secured by fraud on his widow held sustained by preponderance of evidence.

Finding that settlement of claim for death of employee, and consent judgment based thereon were not obtained by fraud on employee's widow by leading her to believe settlement covered only amount due on workmen's collective insurance policy taken out by employer and not employer's liability for the negligent killing *held* sustained by preponderance of evidence.

2. **Appeal and error** ⚖=1011(1)—Trial court's finding on conflicting evidence will not be disturbed.

In absence of obvious error of law, or serious mistake of fact, trial court's finding on evenly balanced conflicting evidence will not be disturbed by appellate court.

3. **Release** ⚖=12(3)—Inadequacy of amount of settlement for death is not of itself sufficient to set aside release.

Inadequacy of amount of settlement for death of employee, though an element, inter alia, to be considered, is not of itself sufficient to set aside release.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action by Eliza Simmons and others against the Utah Copper Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

E. A. Walton, T. D. Walton, W. M. Nelson, and Clarence M. Beck, all of Salt Lake City, Utah, for appellants.

C. C. Parsons, of Salt Lake City, Utah (A. C. Ellis, Jr., and L. F. Adamson, both of Salt Lake City, Utah, on the brief), for appellee.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

FARIS, District Judge. Plaintiffs, who are respectively the widow and four children of one John A. Simmons, deceased, sued defendant for damages caused by the death of their decedent, accruing through alleged negligent acts of defendant.

Decedent came to his death on the 3d day of April, 1910. The instant action was begun on the 10th day of May, 1924. When this suit was commenced, plaintiffs were of the ages following: Eliza Simmons was 46 years of age; Thomas, was 22 years and 5 months of age; Marie, was 19 years of age;

and William and Harold were respectively 17 and 15 years of age. The latter two, being infants, sue here by plaintiff Eliza Simmons as their guardian ad litem.

Defendant pleaded divers statutes of limitations, as well as estoppel by a judgment by consent rendered on the 25th day of October, 1910, on the same cause of action and between the same parties. By the reply, the good faith of the judgment pleaded was attacked for fraud, for that, when the prior action, in which was rendered the consent judgment, was begun and prosecuted, plaintiff Eliza Simmons (who then, in October, 1910, sued for herself and these same infant and former infant plaintiffs) was fraudulently misled and overreached, as she alleges, by the defendant, acting through an adjuster for the Guardian Casualty & Guaranty Company, and the then attorneys for defendant and made to believe that the former suit was for money due on certain insurance only, and that it did not include any damages accruing to the plaintiffs therein and herein for the negligent killing of plaintiffs' decedent. Issue was joined on the question of fraud and the trial court, on the equity side, heard the case on this issue, in advance of a trial on the merits (Liberty Oil Co. v. Condon Bank, 260 U. S. loc. cit. 242, 43 S. Ct. 118, 67 L. Ed. 232), and on the facts held that plaintiffs were not entitled to set aside the former judgment and recover, and dismissed the case, and plaintiffs appealed, in due form.

Defendant carried insurance in the Guardian Casualty & Guaranty Company, to protect itself against liability for damages arising from hurts to its employees through its negligence. Defendant was at the same time insured in the same insurance company on what is called in the record "workmen's collective insurance" covering employees; by virtue of which it seems, the heirs of an employee were entitled, in case of his death, to recover 26 weeks' pay at the weekly wages deceased was earning at the time of his death. This latter so-called workmen's collective insurance seems to have been payable to such heirs directly upon the death of an employee, without regard to whether such death was due to the negligence of the employer or not. But the nature and the precise conditions under which the insurance company became liable to pay this collective insurance is left somewhat indefinite and dark on the record. Counsel below agreed, however, that the right of the heirs to collect this collective insurance was an absolute right without regard to where fault lay for the lethal hurt. Since, however, ordinary liability insurance was also written and in force, and carried by the same insurance company for defendant, the exact nature of this collective insurance is not at all important.

Some six months after the death of plaintiffs' decedent an adjuster representing defendant's insurer, the Guardian Casualty & Guaranty Company, called on plaintiff, Eliza Simmons, for the purpose of settling with her the damages accruing to plaintiff from the death of her husband, as well as for an adjustment of the collective insurance. It was agreed, and it was conceded below, that there was then due plaintiffs from the workmen's collective insurance the sum of $591.50. Throughout this adjuster disclaimed any liability of defendant for any damages on account of the death of decedent; contending that such death had not been caused by defendant's negligence. After considerable discussion at different times, both with plaintiff, Eliza Simmons and her father in her presence, it was agreed to pay her and she agreed to take, the sum of $843.50. Thereupon, since four of the plaintiffs were then infants, a friendly suit was brought in the names of plaintiffs against the defendant herein. This suit was brought in two counts. The first count was for damages bottomed on the alleged negligent killing of plaintiffs' decedent by defendant and the judgment prayed for was the sum of $10,000. The second count asked for the amount of the workmen's collective insurance and was for the sum of $591.50. The attorney for plaintiffs and who filed the above action, was procured and paid by the insurance company, which as said, was secondarily liable to pay any damages which might be adjudged against defendant. In this action a judgment by consent was rendered for plaintiffs on October 25, 1910, for the total sum of $843.50, which was paid to plaintiff, Eliza Simmons for herself and as guardian ad litem for the infant plaintiffs.

[1] In her testimony given on the trial below, plaintiff Eliza Simmons says, that she was misled by the adjuster into the belief, and that she believed at the time of the first suit, that it included only the matter of collection of the workmen's collective insurance, which it can be gathered from the record defendant was primarily liable to pay, and that she did not know that suit had been brought for her and the other plaintiffs for damages for the negligent killing of her husband, or that the damages awarded her by the former judgment included any sum

on account of damages for such negligence. She further said, that she did not read the papers which she signed, but merely signed when and where she was told to sign. She frankly admits that the adjuster at all times disclaimed liability on the part of defendant, on the ground that it had not been negligent. While she also says that the only matter discussed between the adjuster and her was the insurance money, she yet speaks of the conversation in terms of conclusions only, and does not attempt to state any language of the adjuster which led her to the conclusions she reached. A fair summary of her position and statements is shown by the below recited excerpt from her testimony:

"I did not know I was releasing the Utah Copper Company of liability for the death of my husband. It was my understanding that I was signing some insurance papers. No one told me that it was necessary for me to sign them. After the papers were signed Callaghan or King or someone said we had to go some place. I don't remember who said it. They paid me a check for eight hundred and some odd dollars about that time. It was my understanding that they were paying me the insurance money and that they had donated the funeral expenses."

Her version of what happened and what was said is contradicted both by the record and the witnesses offered by the defendant on the trial below. She stands alone upon the record in her contention that she was overreached and misled, and is contradicted as to her lack of knowledge of what she was then adjusting and taking judgment for, by the other witnesses in the case as already said, as well as by the transcript of her own testimony given by her on the trial of the former action. Lumley v. Wabash Ry. Co. (C. C.) 71 F. 21.

[2] The judgment of the trial court is correct even on the point of a preponderance of the evidence. This preponderance was against her and not for her and the court below could not have found any other way. Moreover, if this evidence had been more evenly balanced, there is a conflict between this plaintiff as a witness, and other witnesses in the case. In such case, an appellate court will defer to the finding of the trial court, and his finding will not be reversed, save in the presence of an obvious error of law, or a serious mistake of fact. Brookheim v. Greenbaum, 225 F. 763, 141 C. C. A. 89; Roswell Drainage District v. Dickey (C. C. A.) 292 F. 29. Upon the facts, and this is a facts case, we see no reason for disturbing the judgment rendered below.

[3] It is strenuously urged by plaintiffs that the inadequacy of consideration was so grossly apparent as of itself to argue fraud and the overreaching of plaintiffs on the part of the adjuster. Concededly inadequacy of consideration is an element, inter alia to be considered, and, while a few cases are to be found wherein such inadequacy was of itself alone deemed sufficient to set aside a release, the great weight of the authorities is to the contrary. Union Pac. Ry. v. Harris, 158 U. S. loc. cit. 333, 15 S. Ct. 845, 39 L. Ed. 1003. In the case last cited, the Supreme Court of the United States approved a charge on the point in question which said: "If he [the party signing the release] understood what he was doing and understood that he was making a settlement of the whole business—the entire matter between himself and the railroad company—then he is bound by the settlement without regard to the amount of money which he received,"—saying, the charge as a whole was in accordance with the great weight of authority upon the subject, and was correct upon the issues joined and the evidence thereon (citing cases).

Casually, and in passing, it may be said, that the defense raised by plea below, that the local statutes of limitations barred an action at law for the negligent killing of plaintiffs' decedent, when such action was begun more than 14 years after such death, is interesting, as is likewise the contention, that both the law as to laches, and the analogy of other local statutes of limitations, have the effect to make estoppel by judgment absolute after so great a lapse of time. But as what has been said already, touching the failure of plaintiffs to meet the burden of proof incumbent on them, disposes of the case, no reason exists to discuss other matters of defense.

It follows that the judgment below ought to be affirmed, which is accordingly ordered, with costs to appellee.