# F. T. DOOLEY LUMBER CO. v. UNITED STATES.

## No. 9558.

Circuit Court of Appeals, Eighth Circuit.
Jan. 27, 1933.

Rehearing Denied March 13, 1933.

F. E. Hagler, of Memphis, Tenn., for appellant.

Lester L. Gibson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Wallace Townsend, U. S. Atty., and Ira J. Mack, Asst. U. S. Atty., both of Little Rock, Ark., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.

The appellant, who will be referred to as the taxpayer, has been since 1923 a manufacturer of hardwood lumber. It brought an action at law to recover alleged overpayments of corporate income taxes for 1925 and 1926. The case was tried by the court without a jury, and resulted in findings and a judgment in favor of the government. From the judgment this appeal was taken.

For the years 1923, 1924, 1925, and 1926, the taxpayer filed its returns, setting up its inventories on what is called the "constant price basis"; that is, an unvarying price for each grade of lumber, without reference to cost or market price. In 1927, an agent of the Commissioner of Internal Revenue investigated the returns for 1923 and 1924, and adjusted the inventory of lumber on hand as of December 31, 1924, to a cost basis by ascertaining the average cost per thousand feet of lumber manufactured in that year, and applying such average to the number of thousand feet of lumber on hand December 31st. It became necessary for the taxpayer to adjust its inventories for 1925 and 1926 so as to reflect the changed basis for those years. This was done by applying the average manufacturing cost per thousand feet to its standard lumber, and bona fide selling price less cost of sale to its defective lumber. This adjustment of inventory showed an overpay-

ment of taxes in 1925 of $3,463.04, and in 1926 of $3,933.61. Amended returns for those years and claims for refund were filed by the taxpayer. The Commissioner computed the inventories for 1925 and 1926 upon the average cost basis, as had been done for 1924, and determined an overassessment for 1925 of $2,881.21, and for 1926 of $2,465.91. Those amounts were refunded. The difference between what the taxpayer claimed and what it was allowed, which resulted from the difference in method of inventorying its defective lumber, forms the basis of the taxpayer's demand.

Upon the trial, the court, having found the facts to be substantially as we have stated them, reached the conclusion: "That the lumber inventory of the plaintiff for income tax purposes having been placed on a cost basis as of December 31, 1924, that such basis of computing inventories must be continued until permission to change the same has been granted by the Commissioner of Internal Revenue; that under the statutes and under the regulations issued by the Commissioner, pursuant to law, the plaintiff is not permitted in arriving at the inventory value of its lumber on hand to apply an average cost per M feet to its standard grades of lumber, and the bona fide selling price, less cost of sale to its defective or low grades of lumber, as it has attempted to do; that the Commissioner of Internal Revenue has correctly applied the cost basis to the entire inventories of plaintiff for the calendar years 1925 and 1926 and issued certificates of overassessment to the plaintiff on the basis of such inventories; and which amounts of such overassessment as shown by such certificates have been refunded to plaintiff. Plaintiff is not therefore entitled to recover herein and judgment may be entered for the defendant."

The taxpayer contends that, under the law, the evidence, and the findings of fact, the judgment cannot be sustained.

Section 205 of the Revenue Acts of 1924 and 1926 (c. 234, 43 Stat. 253, 260; c. 27, 44 Stat. 9, 16 [26 USCA § 936]) provides: "Whenever in the opinion of the commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."

Article 1611 of Regulations 62 and 65 of the Treasury Department provides: "In order to reflect the net income correctly, inventories at the beginning and end of each year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor."

The second paragraph of article 1612 of such regulations contains this provision: "The basis of valuation most commonly used by business concerns and which meets the requirements of the Revenue Act is (a) cost or (b) cost or market, whichever is lower. * * * Any goods in an inventory which are unsalable at normal prices or unusable in the normal way because of damage, imperfections, shop wear, changes of style, odd or broken lots, or other similar causes, including second-hand goods taken in exchange, should be valued at bona fide selling prices less cost of selling whether basis (a) or (b) is used, * * * *."

Paragraph 3 of article 1612 is in part as follows: "In respect to normal goods whichever basis (a) or (b) is adopted must be applied with reasonable consistency to the entire inventory. Taxpayers were given an option to adopt the basis of either (a) cost, or (b) cost or market, whichever is lower, for their 1920 inventories. The basis adopted for that year is controlling and a change can now be made only after permission is secured from the Commissioner."

The contention of the taxpayer was that its defective lumber constituted "goods in an inventory which are unsalable at normal prices or unusable in the normal way because of damage and imperfections," and that it was therefore justified in using bona fide selling price, less cost of selling, as a basis for the inventory of such lumber.

The court did not find that the defective lumber was "unsalable at normal prices or unusable in the normal way"; and hence did not find that defective lumber came within the provision of the regulation upon which the taxpayer relies, although such a finding was requested by the taxpayer. We quote from the findings of fact:

"In its amended return for 1925 plaintiff used as its opening inventory the inventory value as of December 31, 1924, as adjusted by the Commissioner; and based its closing inventories as of December 31, 1925, and December 31, 1926, on the basis of the average cost per M feet, determined by the method set out in the preceding paragraph, of its standard lumber and of its bona fide selling price, less the cost of sale, on its defective lumber. * * *

"The Court finds that the closing inventory of plaintiff for the year 1924 was on the basis of the cost of all its manufactured lumber on hand at that time, and the plaintiff was placed on such cost basis for its inventories; that the same cost basis was used by the Commissioner of Internal Revenue for the years 1925 and 1926; that the claim of the plaintiff in this suit is based on its contention as set out in its complaint, that in computing the inventory value of the lumber on hand on December 31, 1925, and December 31, 1926, it is entitled to place an average cost price per M feet on its standard lumber and to place its defective or low grade of lumber in such inventory at its bona fide price, less cost of sale."

The taxpayer claims, however, that these findings are to be construed as a determination that defective lumber was unsalable at normal prices, since that was the issue litigated and the court did not specifically find otherwise. It also argues that the findings, if construed otherwise, are not sustained by the evidence. The government denies that the findings or the evidence require a different result, and contends that the provision of the regulation in question does not apply to manufacturers of lumber.

█ "A regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision." Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 157, 64 L. Ed. 297; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; United States v. Birdsall, 233 U. S. 223, 231, 34 S. Ct. 512, 58 L. Ed. 930; United States v. Smull, 236 U. S. 405, 409, 411, 35 S. Ct. 349, 59 L. Ed. 641; United States v. Morehead, 243 U. S. 607, 37 S. Ct. 458, 61 L. Ed. 926; United States v. Eaton, 144 U. S. 677, 682, 12 S. Ct. 764, 36 L. Ed. 591; Hover & Co. v. Denver & R. G. W. R. Co. (C. C. A. 8) 17 F.(2d) 881, 884; Daeuffer-Lieberman Brewing Co. v. United States (C. C. A. 3) 36 F.(2d) 568, 570; Williams v. Commissioner of Int. Rev. (C. C. A. 8) 44 F.(2d) 467, 468.

█ The provision of the regulation with which we are concerned is general in its terms, applies to all inventories, and does not by its language exclude those of manufacturers. There may be good reasons why this taxpayer should not be permitted to take advantage of it, as the government suggests, but this court is not at liberty to impose restrictions upon its application when those who promulgated it have expressed none. No doubt, a regulation which permitted a taxpayer to escape all or any portion of a tax which the law imposed upon him would be ineffectual as being in conflict with the taxing statute. It is not necessary, however, in this case to determine whether this regulation, when applied to the inventory of a manufacturer, is in conflict with the law imposing the tax; and we assume, without deciding that it was applicable. Unless the defective lumber constituted goods "unsalable at normal prices or unusable in the normal way," it could not be valued at bona fide selling price. It seems equally clear that, unless the evidence compelled the court so to find, its findings and judgment cannot be disturbed by us. It becomes necessary to examine the evidence.

The bookkeeper for the appellant testified that he knew the quantity and grade of lumber on hand December 31, 1925, and December 31, 1926, and, on direct examination, with reference to the defective lumber, said:

"* * * I know how much of it was defective and unsalable in the normal way; I do not know the exact footage but I have the record and can determine it, and I did so determine it. The information as to what lumber is unsalable in the normal way comes from the yard foreman, Mr. N. B. Buehl; he determines the quantity of defective lumber on the yard, and turns the lists in to the office, where it is carried into the closing inventory, and this was done in the closing inventories for 1925 and 1926. Mr. Jones and I fixed the price on this defective lumber; he is the secretary and treasurer of the Company, and has had about 15 years experience in the lumber business.

"In fixing the price on the defective lumber we made up lists to mail to our customers, and showed just what we hoped to get for it; that was the idea we had in mind when we placed a price on it. There cannot be said to be any market price for the lumber we class as defective lumber; there are no quotations you can go to and get the price on lumber of that kind. You just have to get what you can for it. * * *

"Our inventory for 1925 and 1926 was valued on the basis of cost. It was not on cost or market, whichever is lower; it was on cost. The defective lumber was valued at selling price; it was not valued at market. It could not have been sold at cost, and we knew then that it could not be sold at cost."

2On cross-examination, he testified in part as follows:

"Q. Did you put in the total cost in your return? A. We put the lumber that was salable at cost.

"Q. What do you mean salable lumber? A. There is a certain per cent won't begin to· sell for market price; can't hope to get cost for it; it is defective.

"Q. What way do you mean it is defective? A. Well, it is shaky, what we call shaky, and full of knots and cuts out of the heart of the log. It is not as good as the other part, and it is defective on account of a collection of defects.

"Q. It is just a low grade of lumber? A. Yes, sir, defective lumber.

"Q. Do you call it defective, or low grade? A. Well, it is both, it is defective.

"Q. It is a product of your mill, you manufacture it all the time and sell it? A. Yes, sir.

"Q. When you want to put the low grade lumber in, do you put it in at cost? A. No, sir, at the selling price.

"Q. So your statement is not true that you put it in at cost? A. Yes, sir, but the defective we put in at selling price. * * *

"Q. And you put the low grades in at market or selling price? A. The low grade— the defective?

"Q. Well it is a low grade lumber? A. Yes sir."

Mr. Buehl, vice president and yard foreman of the taxpayer, testified: "When the lumber comes out on the yard from the mill it is all under my supervision; I attend to sorting and piling it, so that I know what grade ·each stack of lumber is supposed to contain. As we load out lumber it develops that some has deteriorated in drying; we have to lay that out; it is lumber that would not be accepted; and we pile it up in other piles. That is the defective lumber. * * * By defective lumber I mean lumber that is not up to grade, lumber that is rotten, and weakened by knots and· shakes and other defects which we have to see in the grading of lumber."

Upon cross-examination, he testified:

"Q. You don't advertise it as defective lumber, Mr. Buehl? A. We advertise it as cull lumber; that means defective lumber.

"Q. Well it is low grade lumber? A. Yes, sir."

Mr. Cross, a certified public accountant, who checked the taxpayer's inventories for 1925 and 1926, testified that normal lumber was valued at cost, and that that which would not bring the normal price was put in at the selling price. On cross-examination he was asked the following questions and gave the following answers:

"Q. You took the high grade lumber and put an average cost on it? A. That is right.

"Q. Did you put the average cost on all the lumber in the inventory? A. We didn't apply the average cost to the entire inventory.

"Q. That is what I am getting at, you didn't put in the total cost in the inventory? A. Not on the lower grades.

"Q. And you took the low grade and did not put cost on it, how did you put it in? A. I don't know what you mean by low grades lumber * * * we took the average cost and applied it to· all that would bring cost, and that that wouldn't bring it we didn't.

"Q. That was your idea of cost, you put the high grade in at cost and the low grade at selling price? A. No, that is what the law says."

The court then asked:

"Q. How do you arrive at the cost of your lumber? A. I take the total cost to produce it (the cost of the log and the manufacture) and divide by the total footage.

"The Court: By total footage do you include what you regard as normal and low grade? A. Yes, sir, all lumber produced. * * *

"The Court: But in fixing the value upon the product, the stuff that you still have on hand, you put the cost price upon that which you think is worth that amount or more, then you put the selling price upon all the lumber that is less than the average cost price? A. That is right."

Mr. Wishendorf, who checked the amended returns for the years 1925 and 1926 for the collector of internal revenue, called as a witness by the taxpayer, testified in part as follows: "When I got to Brinkley I went over this cull business. When an inspector hits a board it is either accepted, discarded, or classified a cull. This is culls, and the Bureau has ruled that where they will not bring the cost price they are allowed to figure them in at the selling price, and this book (Holding Regulations 65 Income Tax) is the authority to go by. We are instructed to take the bona fide selling price on lumber where it is culls or anything in that category. The provision I refer to applies to cull lumber or defective lumber, anything in manufacture that could be called a cull or discard." He further testified that he found the amended returns cor-

rect and that the taxpayer was authorized to put in its defective lumber on the basis of bona fide selling price. At the close of Mr. Wishendorf's testimony, which came as a surprise to counsel for the government, the court granted an adjournment. When the trial was resumed, this same witness was called to the stand by the government. We quote the following questions and answers:

"Q. Did you arrive at an average price of the lumber for all grades manufactured? A. We first used the average cost of the whole amount of lumber on hand.

"Q. And did you apply that all the way through? A. No, we made a distinction between the average cost and made an allowance for defective lumber.

"Q. Did you or not place the high grade lumber at the average cost on that inventory? A. I did.

"Q. What did you place the low grade at? A. At market price, quoted as of December, the last half of December in 1925, the last half of December 1926. I forget the name of the paper, but the Lumbermen's Journal.

"Q. So you applied to the low grade lumber the market price? A. Yes, sir.

"Q. Less that deduction? A. For delivery charges to the market.

"Since I testified before, I have made an investigation to ascertain if the method of valuing lumber was accepted by the Bureau; I have gone over my report and I realize a mistake was made; it has never been accepted, not that I know of. I have never been advised of its acceptance.

"All of the sound lumber we valued at the average price, and for the lower grade lumber we took the market price at Chicago where he sold most of the lumber; that was the selling price less the cost of getting it there."

▇▇▇▇ Since this is an action at law, we cannot reverse unless we can say either that the court's findings of fact do not support the judgment, or that the evidence compelled the court to make different findings and to reach a different conclusion.

In Dooley v. Pease, 180 U. S. 126, 131, 21 S. Ct. 329, 331, 45 L. Ed. 457, the court said:

"Where a case is tried by the court, a jury having been waived, its findings upon questions of fact are conclusive in the courts of review, it matters not how convincing the argument that upon the evidence the findings should have been different. Stanley v. Supervisors, 121 U. S. 547, 7 S. Ct. 1234, 30 L. Ed. 1000, 1002.

"Errors alleged in the findings of the court are not subject to revision by the circuit court of appeals, or by this court, if there was any evidence upon which such findings could be made. Hathaway v. National Bank, 134 U. S. 498, 10 S. Ct. 608, 33 L. Ed. 1004, 1006; St. Louis v. Rutz, 138 U. S. 241, 11 S. Ct. 337, 34 L. Ed. 941, 946; Runkle v. Burnham, 153 U. S. 225, 14 S. Ct. 837, 38 L. Ed. 694, 697."

See, also, United States v. Worley (C. C. A. 8) 42 F.(2d) 197, 199; Majestic Co. v. Orpheum Circuit (C. C. A. 8) 21 F.(2d) 720, 731; Simmons v. Utah Copper Co. (C. C. A. 8) 15 F.(2d) 780, 782.

A finding of fact contrary to the weight of the evidence is an error of fact which cannot be reviewed. Wear v. Imperial Window Glass Co. (C. C. A. 8) 224 F. 60, 63; Allen v. Cartan & Jeffrey Co. (C. C. A. 8) 7 F.(2d) 21, 22; Denver Live Stock Commission Co. v. Lee (C. C. A. 8) 18 F.(2d) 11; Federal Intermediate Credit Bank v. L'Herisson (C. C. A. 8) 33 F.(2d) 841, 843.

The making of special findings in an action at law tried by the court is discretionary, and its action in making such findings, in refusing to make requested findings, or refusing to amend findings made, is not subject to exception or review. United States v. Atchison, T. & S. F. Ry. Co. (C. C. A. 8) 270 F. 1, 4; Pennok Oil Co. v. Roxana Petroleum Co. (C. C. A. 8) 289 F. 416, 419; Denver Live Stock Commission Co. v. Lee, supra (C. C. A.) page 16 of 18 F.(2d).

▇▇▇ The finding that defective lumber was inventoried at bona fide selling price does not, as the taxpayer contends, compel a conclusion that it was "unsalable at normal prices" within the meaning of the regulation in question. The court below saw the witnesses and heard them testify. He was better able to gauge the effect of self-interest upon their testimony than we are. Their credibility and the weight of their evidence were for him to determine. He was not required to believe things which seemed unreasonable or improbable.

▇▇▇ Even evidence which is uncontradicted is not necessarily conclusive, and where different conclusions may reasonably be drawn from such evidence, a question of fact is presented. Quock Ting v. United States, 140 U. S. 417, 11 S. Ct. 733, 35 L. Ed. 501; Lowenstein v. Platt & Co. (C. C. A. 2) 58 F.(2d)

173; The Richelieu (D. C.) 27 F.(2d) 960, 970; Fire Ass'n of Phila. v. Weathered (C. C. A. 5) 54 F.(2d) 779; Southern Pac. Co. v. Hanlon (C. C. A. 9) 9 F.(2d) 294, 296; Small v. Gilbert (D. C.) 56 F.(2d) 616, 620; Cline v. United States (C. C. A. 8) 20 F.(2d) 494, 497; Reiss v. Reardon (C. C. A. 8) 18 F.(2d) 200, 202; Maners v. Ahlfeldt (C. C. A. 8) 59 F.(2d) 938, 939; Norton v. United States (C. C. A. 8) 205 F. 593, 601; The Dauntless (C. C. A. 9) 129 F. 715, 721; Wisconsin & Arkansas Lumber Co. v. Day (C. C. A. 8) 35 F.(2d) 563, 566; Mutual Life Ins. Co. v. Hatten (C. C. A. 8) 17 F.(2d) 889; Self v. N. Y. Life Ins. Co. (C. C. A. 8) 56 F.(2d) 364, certiorari denied 53 S. Ct. 11, 77 L. Ed. ——; Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 74 L. Ed. 720; Bank of Union v. Fidelity & Casualty Co. (C. C. A. 8) 62 F.(2d) 1040.

The court below in this case might reasonably have believed that some or all of the low grade lumber, cull lumber, or lumber which would sell at less than cost, had a normal price and was not unusable in the normal way. He might have believed that the taxpayer had valued its low grade or defective lumber at its market price, as finally testified to by Wishendorf. He refused to find that the defective lumber fell within the class which might be inventoried at selling price. His conclusion is consistent only with the hypothesis that it did not.

Since the judgment is not inconsistent with the findings nor unsupported by the evidence, it must be, and is, affirmed.

### On Petition for Rehearing.

The appellant seeks a rehearing upon the ground that this court has misconceived the nature of this action and the questions involved, and has called attention to the fact that, while this is an action at law, it is brought against the United States under subdivision (20) of section 41, title 28, U. S. C. [28 USCA § 41 (20)], and that therefore the statement in the opinion that, "the making of special findings in an action at law tried by the court is discretionary, and its action in making such findings, in refusing to make requested findings, or refusing to amend findings made, is not subject to exception or review," is inaccurate, since section 764 of title 28, U. S. C. (28 USCA § 764), provides that: "It shall be the duty of the court to cause a written opinion to be filed in the cause, setting forth the specific findings by the court of the facts therein and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon. If the suit be in equity or admiralty, the court shall proceed with the same according to the rules of such courts." The appellant is correct in this regard, and a failure by the lower court to comply with that section would be ground for reversal. United States v. Kelly (C. C. A.) 89 F. 946; United States v. Tisdale (C. C. A.) 114 F. 883; United States v. Phillips (C. C. A.) 24 F.(2d) 195.

The court below filed an opinion setting forth his findings of fact and conclusions of law. The appellant's contention has been that the findings of fact and the evidence required a judgment in its favor. In its reply brief the appellant said: "Appellant does not seek to disturb the findings of fact made by the court below, only the conclusion of law is in question now." With the contention that the findings and evidence required a different conclusion than that which was reached, we did not agree and do not agree, nor do we feel called upon, under the circumstances, to send the case back for retrial.

The petition for rehearing is denied.