## UNITED STATES v. ONE FORD V–8 SEDAN.

### No. 272.

District Court, W. D. Michigan, N. D.

July 12, 1934.

Joseph M. Donnelly, of Grand Rapids, Mich., for the United States.

Hudson & Coates, of Sault Ste. Marie, Mich., for Mrs. Anna Steve.

RAYMOND, District Judge.

On April 23, 1934, an order was entered confiscating the Ford sedan here in controversy as against all persons excepting the true owner. The petition of Anna Steve, of Sault Ste. Marie, Mich., is now before the court. In it she claims to have acquired title by gift. She prays for an order declaring

her to be the true and lawful owner and directing the return of the automobile.

Petitioner is a sister of John Hamilton, associate of the notorious outlaw, John Dillinger, who escaped from the Lake County Jail, Crown Point, Ind., on March 3, 1934, in a Ford sedan stolen from the sheriff of that county (not, however, the automobile here under consideration). On March 8, 1934, a warrant was issued by the United States commissioner at Chicago for Dillinger's arrest upon a charge of violation of the Dyer Act (18 USCA § 408). At about 8:30 o'clock in the evening of April 17, 1934, Dillinger, Hamilton, and a woman visited Mrs. Steve's home at Sault Ste. Marie. They came in two automobiles and remained in the house about two and a half hours. It appears from a statement later signed by Anna Steve that she knew that Hamilton was a convict who had escaped in September, 1933, from Indiana State Prison, where he had been confined for bank robbery; that when the fugitives entered her home Hamilton had a machine gun wrapped in a blanket; that Dillinger had a rifle and each had a revolver; that both were wearing bullet-proof vests and kept constant watch at the windows; that she served them with a meal and that they remained until about 11 p. m., when they left in one of the automobiles. She testified that the keys to the automobile in question were delivered to her together with an invoice from the Hippodrome Motor Company of Nashville, Tenn., showing that the automobile was sold for cash to one Art Norton.

On April 20th, federal agents, accompanied by the sheriff of Chippewa county, went to the house, without a search warrant, for the purpose of apprehending the criminals, and searched the house. During the search, Mrs. Steve handed them the keys of the automobile and the invoice, and they then went to a cow shed on an adjoining lot and there seized the automobile here in question and which was one of the automobiles in which the fugitives had arrived. Petitioner's claim is that the automobile was given to her by her brother and that she now has title thereto. She also asserts that the seizure was illegal because the search was within the curtilage without a warrant. At the June, 1934, term of the Northern Division of this court, an indictment was returned by the grand jury, charging Anna Steve with the offense of harboring and concealing John Dillinger, a fugitive from justice, and to this charge a plea of not guilty has been entered.

■■ A heavy strain upon credulity is created by petitioner's assertion that the fugitives generously gave a recently purchased automobile, costing over $700 and held by one of the donors under fictitious name, in return for hospitality of about two and a half hours. The circumstances do not warrant a conclusion that fraternal affection afforded the underlying motive for the alleged generosity. Doubt of good faith and genuineness of either the proffer or the acceptance of the gift is heightened by the warning to petitioner that the automobile was "hot" and would not be available for use until after 1934. Its later removal to a lean-to or cow shed adjoining a barn wholly detached from the house and located on another lot adds to the obvious earmarks of criminality which appear in all phases of the transaction. Collectively they conclusively thwart all attempts to clothe any of the acts of the parties with the garb of innocence.

Nor do we find convincing the argument that the testimony is not contradicted. In the very nature of things, it could not be. Courts do not hesitate to discredit undisputed verbal testimony when the surrounding circumstances render contradiction impossible and at the same time point strongly to opposite conclusions. See Spiro State Bank v. Bankers' National Life Insurance Co. (C. C. A.) 69 F.(2d) 185, and F. T. Dooley Lumber Co. v. United States (C. C. A.) 63 F.(2d) 384. Considering the entire environment, the more rational conclusion is that the automobile was "planted" for future use in emergencies likely to ensue from the desperate situation of the outlaws and that the gift, if any, was conditional upon nonexistence of such necessary use.

The title asserted by Mrs. Steve rests alone upon the thin support of claim of verbal gift. So unusual and extraordinary are such transfers of title of motor vehicles that the assertion itself arouses doubt of the fact. The court therefore finds as a fact that petitioner has not established her claim of ownership as against the seizure by the government agents.

■ The claimed immunity from search of the lean-to in which the automobile was found by the officers finds support in legal precedents. But such precedents, like all others, are subject to challenge and are entitled to reconsideration in the light of existing conditions.

The present economic emergency which has affected and confused all departments of government finds its counterpart in an emergency, no less serious, which exists in the conflict between the criminal and the rights of society. In this emergency, precedents in

construction and application of statutory, constitutional, and common law must be re-examined and modified, if need be, in the interests of society.

Never must it be overlooked that law finds its origin and fundamental purpose in the protection of the weak against the strong, a principle too frequently forgotten or ignored. So extensive has become the immunity available to criminals through advancement of science and the relative retrogression of processes of apprehension, conviction, and ultimate segregation that drastic changes of methods are imperative for the protection of that portion of society which still believes in government by laws.

Too close adherence to precedents will result in an almost impregnable fortress about the criminal, who already makes effective use of the advantages of the machine gun, bullet-proof clothing, and the armoured car in acts of commission and escape; of the talents and influence of the learned professions in escaping conviction and punishment; and of the influence of politicians and the credulity of boards of pardon and parole in minimizing penalties. No sufficient reason exists why precedents, established in the days when the contest between the criminal and his prey afforded some slight chance of successful resistance by the victim, should be adhered to for the protection of the criminal.

Origin of the doctrine of the sanctity of the home and its extension to all buildings "within the curtilage" gives only meager support for its attempted application to chicken coops, garages, sheds, lean-tos, bathhouses, barns, and rudimentary distilleries or breweries. In ancient days when homes were in reality castles or forts commonly erected on high hills for purposes of defense and protection, and in the later periods when buildings were grouped and attached with a view to protection from predatory elements of society, the extension of the doctrine found a basis in the common sense and experience of mankind. That basis is now practically non-existent. Ways and means made available to the criminal by the advancement of science have far outstripped civilization, and not only the home but buildings of stone and marble and even prison walls afford only slight obstruction to the lawless. The home and the curtilage no longer protect their owners. In frequent instances they have become sanctuaries for the criminal and effectual means for the suppression of evidence. Courts should not fail to take cognizance of the fact that the enemies of civilization are now attempting to occupy the castle erected by judicial decision to protect the innocent.

It is the view of the court that the lean-to where the automobile was seized was in no proper sense a part of the curtilage of petitioner and that its seizure without the protection of a search warrant was justified. An order will accordingly be entered denying the prayer of the petition.